**Michael DISABATINO, Respondent Below, Appellant,**

v.

**Mary Ann SALICETE, Petitioner Below, Appellee.**

Nos. 462, 1994, 23, 1995.

Supreme Court of Delaware.

Submitted: July 22, 1996.
Decided Aug. 12, 1996.

Thomas Stephen Neuberger (argued), Thomas S. Neuberger, P.A., Wilmington, and Gary L. Smith, Newark, for Appellant.

Daniel F. Kelleher, Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court en banc.

WALSH, Justice:

In this appeal from the Family Court, we are required to determine the extent of this Court's authority to enforce the terms of a supersedeas security undertaking and to impose sanctions against an appellant for alleged violation of the conditions of a stay order. We conclude that this Court possesses inherent authority to require compliance with the conditions of stay orders. We further conclude that appropriate sanctions for such violation may include forfeiture of the security in order to uphold the authority of the Court and to deter future violators.

## I

The background of this appeal is fully set forth in a previous *en banc* decision of this Court which reversed an initial contempt finding of the Family Court. *DiSabatino v. Salicete*, Del.Supr., 671 A.2d 1344 (1996) (*"DiSabatino I"*). We recite only those facts necessary to an understanding of the present issues before the Court.

The appellant, Michael DiSabatino ("DiSabatino") and the appellee, Mary Anne Salicete ("Salicete"), were divorced on July 1, 1993. For the next eighteen months they engaged in a series of acrimonious proceedings in the Family Court concerning ancillary matters, including property division. In the course of these proceedings, DiSabatino was the subject of petitions filed by his former wife charging him with violations of the automatic restraining order entered pursuant to 13 *Del.C.* § 1509(a). These allegations included personal abuse of Salicete and acts of intimidation and harassment late at night. The Family Court conducted four separate hearings for violations of the restraining order and on each occasion assessed monetary penalties for contempt or imposed restrictions on DiSabatino's activities, including a curfew. On the last occasion, December 27, 1994, the Family Court found DiSabatino in contempt for failure to pay $18,000 in contempt fines previously assessed. As a sanction, the court ordered DiSabatino committed to the Department of Adult Correction until he paid the $18,000 plus interest.

The Family Court refused to stay its order of December 27, 1994, and DiSabatino promptly sought a stay in this Court, pending appeal. On December 30, 1994, this Court entered an order granting a stay subject to several terms and conditions. *DiSabatino v. Salicete*, Del.Supr., No. 462, 1994, Hartnett, J. (Dec. 30, 1994) (ORDER) ("the Stay Order"). The Stay Order required DiSabatino to deposit the sum of $18,100 in a joint escrow account, as security for his compliance with the conditions of the stay, with withdrawal subject to further order of this Court. The Stay Order continued the existing no-contact order of Family Court and imposed new restrictions on DiSabatino's activities including the following:

4. While this Order is in effect, Appellant may drive a motor vehicle within the State of Delaware but only for occupational purposes and only between the hours of 7:00 a.m. and 9:00 p.m. E.S.T. Monday through Saturday. Appellant may leave the State and may operate a motor vehicle while out of the State of Delaware at any time.

5. While this Order is in effect, and while in Delaware, Appellant shall remain at his home from 9:00 p.m. to 7:00 a.m. E.S.T. daily.

Paragraph 6 of the Stay Order provided that: "Any future violations by Appellant of the prior no-contact orders entered by the Family Court or this Order shall result in an immediate forfeiture of the bond and a vacation of the stay entered herein." The Stay Order was to "remain in effect until further order of this Court."

During the time the principal appeal was being briefed and argued in this Court and prior to the issuance of *DiSabatino I*, the parties apparently continued in a contentious relationship. On December 27, 1995, Salicete filed a motion for sanctions or remand alleging that DiSabatino had violated certain conditions of the Stay Order, specifically that he had failed to comply with the curfew restrictions and had operated his motor vehicle at a time beyond the hours permitted by the

Stay Order. Following the issuance of the opinion in *DiSabatino I*, this Court entered an order of remand to the Family Court to "make findings of fact and conclusions of law, with respect to DiSabatino's alleged contempt" of the Stay Order. *DiSabatino v. Salicete*, Del.Supr., Nos. 462, 1994 and 23, 1995, Holland, J. (March 4, 1996) (*en banc* Order).

The Family Court conducted an evidentiary hearing on March 19, 1996, in response to this Court's remand order. Two witnesses, Daniel Salerno and Robert Scaran, testified that they observed DiSabatino at a local restaurant as late as 10:50 p.m. on December 1, 1995 and 11 p.m. on December 15, 1995. On the latter date, both witnesses testified that DiSabatino was operating a motor vehicle and engaged in a threatening exchange with Salerno. Scaran testified that he had also observed DiSabatino at the same restaurant on the Wednesday before Thanksgiving in 1995 in the company of Scaran's ex-wife, at 9:40 p.m. DiSabatino declined to testify at the Family Court hearing on the basis of self-incrimination should there be a later criminal contempt proceeding.

In a report dated April 3, 1996, the Family Court determined that there was a factual basis to support "the legal conclusion that Mr. DiSabatino violated paragraphs 4 and 5 of the Supreme Court's order of December 30, 1994." The Court rejected DiSabatino's claims that (1) the Stay Order was invalid as an order imposing sanctions for criminal contempt and (2) that the length of time the appeal was pending in this court coupled with DiSabatino's health justified violation of the Stay Order.

Following the issuance of the Family Court report this Court directed a notice to DiSabatino to show cause why his appeal bond, *i.e.*, the security escrow, should not be forfeited. Both parties have briefed and argued the questions of whether a violation of the Stay Order occurred and, if so, what sanctions may be imposed.

## II

DiSabatino has advanced several arguments in support of his contention that his actions do not constitute violations of an en-

forceable court order. He contends that he was justified in violating the Stay Order because the appeal process was prolonged and his precarious health somehow excused him from compliance. This argument is frivolous and finds no support in the authority upon which DiSabatino relies, *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). In *Walker*, the Supreme Court *upheld* the enforcement of an *ex parte* injunction issued by a state court which purported to restrict the exercise of First Amendment rights. The Court ruled that application to the issuing court to "have the injunction modified or dissolved," not defiance, was the appropriate method for contesting the terms of a court order. *Id.* at 317, 87 S.Ct. at 1830.

DiSabatino also contends that the Stay Order, by its terms, merely incorporated the no contact provisions of the Family Court and that the curfew restrictions were not subject to the forfeiture provision. This is a disingenuous interpretation of the distinctive terms of the order which provided that "the prior no-contact orders entered by the Family Court *or this Order* shall result in an immediate forfeiture of the bond." DiSabatino's reading of the Stay Order would render it devoid of sanctions with respect to any additional conditions imposed by this Court incident to the granting of a stay pending appeal. Both the plain language of the Stay Order and the clear intention that DiSabatino observe a strict curfew to insure against further contact with his former spouse compel the conclusion that the curfew restrictions were separately subject to monetary sanctions.

## III

DiSabatino's principal defense to the failure to comply with the curfew restrictions is directed to the process for determining a violation of the Stay Order. He contends that any alleged violation of the order constituted a criminal contempt occurring outside the presence of this Court. Since the proceeding seeks the imposition of a penalty, the argument runs, it is criminal in nature, requiring that he be afforded the procedural protections attendant upon a criminal prose-

cution. He seeks to invoke the ruling in *DiSabatino I* which held that the Family Court proceedings which were the subject of the principal appeal were defective because they were adjudicated in the context of a civil contempt. This argument fails to perceive the nature and purpose of a stay order issued by this Court.

■ The filing of an appeal from a judgment of a trial court does not stay or suspend the enforcement of that judgment unless the appellant satisfies certain procedural conditions. *Schmidt v. Schmidt,* Del.Supr., 610 A.2d 1374, 1376 (1992). In the first instance, the appellant must seek a stay of the judgment in the trial court, "whose decision shall be reviewable" by the Supreme Court. Supr. Ct.R. 32(a). Even where a stay is granted, the appellant "shall give sufficient security to be approved by the court below or by a judge of the Supreme Court." Del. Const. art. IV, § 24. The primary purpose of the security, or supersedeas bond, is to protect the appellee from losing the benefit of the judgment through the delay or ultimate non-performance by the appellant. *Ellis D. Taylor, Inc. v. Craft Builders, Inc.,* Del. Ch., 260 A.2d 180, 182 (1969).

The language of Rule 32(a), however, extends the scope of the supersedeas protection to more than simply securing the judgment for the benefit of the appellee. In authorizing either the trial court or this Court to "impose such terms and conditions, *in addition to the requirement of indemnity,* as may appear appropriate in the circumstances," the rule obviously contemplates that interests other than those personal to the appellee may be secured. Supr.Ct.R. 32(a) (emphasis supplied). A breach of any of the conditions of a valid appeal bond or undertaking may be enforced by a proceeding to forfeit the bond. 5 C.J.S. *Appeal and Error* § 1076 (1993).

■ The difference between forfeiting a bond and imposing criminal contempt sanctions is that the former requires no criminal contempt proceedings. After a bond has been posted, the forfeiture of that bond is a civil proceeding. *State v. Slaughter,* 246 Ga. 174, 269 S.E.2d 446, 448 (1980). The enforcement of obligations under such a bond are summary in nature, without the necessity of an independent action. *Cf.* Supr.Ct.R. 32(d)(iv) (liability on bond in a criminal case "may be enforced on motion without the necessity of an independent action"); *accord* 11A Charles Alan Wright, Arthur B. Miller & Mary Kay Kane *Federal Practice and Procedure* § 2971 (1995).

■ To the extent that a court may order a total forfeiture of a bond for violation of the conditions under which a stay has been granted, it may order a partial forfeiture as a monetary assessment to uphold its authority and ensure future compliance with its decrees. For example, courts may order payment of attorneys fees necessary to enforce their orders. *Schauffler v. United Assoc. of Journeymen & Apprentices,* 3d Cir., 246 F.2d 867, 869–70 (1957) ("Without appropriate judicial sanctions to assure compliance with such orders and decrees, violations could occur with impunity and the judicial function would be severely hampered.").

This case is a prime example of the need for an appellate court to exercise its inherent judicial authority to punish a party in order to uphold the court's authority and to discourage further affronts. At the time DiSabatino filed his original appeal, he was facing incarceration to be followed by severe restrictions on his personal liberty. Indeed, in *DiSabatino I,* this Court ruled that the Family Court "proceedings and the sanctions were criminal." 671 A.2d at 1351. The Stay Order entered by this Court relieved DiSabatino of incarceration but continued the Family Court no-contact restriction and imposed other new limitations as a condition of permitting him to remain at liberty pending appeal. His breach of those conditions was a direct violation of a specific order of this Court, and not simply a violation of the spirit of the Family Court no-contact order. This Court cannot permit such flaunting to go unpunished if it is to maintain its authority and command respect for its orders in the future.

## IV

Although he presented no evidence to counter the testimony of the witnesses who testified that he violated the curfew, DiSaba-

tino contends that the Family Court's findings were flawed. In essence, he claims that the credibility questions he raised through cross-examination of the witnesses against him created a reasonable doubt as to whether he violated the Stay Order. DiSabatino argues that the impeachment of one of the witnesses, through prior felony convictions pursuant to D.R.Evid. 609(a), created a reasonable doubt as a matter of law. He provides no legal authority for such a claim and we find it totally devoid of merit.

■ As previously noted, the action to forfeit the appeal bond, including the remand for an evidentiary hearing, is not a criminal proceeding and thus the standard of proof is not one of reasonable doubt. *Cathleen C.Q. v. Norman J.Q.,* Del.Supr., 452 A.2d 951, 954 (1982) (burden of proof test generally applicable in civil proceedings is that of preponderance of the evidence). To the extent that credibility was at issue in the remand proceeding, the Family Court judge, sitting as the trier of fact, was entitled to resolve such questions from his unique perspective. *Dixon v. State,* Del.Supr., 567 A.2d 854, 858 (1989). In this respect, the Family Court determined that "the clear and undisputed evidence presented in this hearing leaves this Court without *any* doubt 'that curfew violations had occurred'" (emphasis in original). Our review of those factual findings is limited to a determination of whether they are clearly erroneous. *Adelaide A.G. v. Peter W.G.,* Del.Supr., 458 A.2d 702, 705–06 (1983). We find no basis to disturb those findings, particularly in view of the fact that no contrary evidence concerning the curfew violation was offered before the fact finder.

V

■ We conclude that the evidence supports the Family Court's conclusion that DiSabatino violated the terms of the Stay Order on at least two occasions during the pendency of the appeal. No reasonable explanation has been offered to excuse or justify such conduct. We accordingly affirm the findings and conclusions of the Family Court and declare the $18,100 posted as security for the stay pending appeal to be subject to forfeiture.

■ In determining the sanctions to be applied, this Court is free to exercise its inherent equitable power to compensate any party harmed by the violation of the stay order as well as to vindicate the authority of this Court. The appellee does not appear to have suffered any direct harm by reason of the curfew violations but she has been put to the expense of enforcement of the Stay Order both in this Court and in the Family Court. Accordingly, we award her reasonable counsel fees and expenses for such efforts in an amount to be determined by the Family Court, not to exceed $2,500 in the aggregate, to be charged against the escrow fund.

■ Although we note that DiSabatino's violations of the Stay Order are consistent with an irresponsible pattern of failure to comply with court imposed restrictions during the pendency of the Family Court proceedings, these violations do not require a total forfeiture of the security. We fix the amount of the forfeiture in the amount of $10,000 as sufficient to vindicate the authority of this Court and to serve as a deterrent against future violations of stay orders. The $10,000 so forfeited shall be payable to the State of Delaware, whose authority is implicated whenever the orders of its courts are disobeyed.

In sum, we conclude that the conditions of the Stay Order have been violated without excuse or justification. As sanctions for such violations, the security posted as a supersedeas is subject to partial forfeiture in the amount of $10,000 payable to the State of Delaware and the payment of reasonable counsel fees and expenses to appellee, not to exceed $2,500 in the aggregate. Counsel for appellee should submit an affidavit setting forth the amount of counsel fees and expenses requested, based on professional services rendered in the Family Court and this Court directed to the enforcement of the Stay Order and consistent with Rule 1.5 of the Delaware Lawyers' Rules of Professional Conduct. The escrow agents are directed to forward to this Court forthwith the sum of $10,000 payable to the Treasurer of the State of Delaware. This matter is REMANDED

to the Family Court for the fixing of counsel fees and expenses, but we reserve authority to issue such further orders as may be necessary to effectuate the terms of this decision.