James S. BLACK, Respondent Below, Appellant,

v.

DIVISION OF CHILD SUPPORT ENFORCEMENT/Aline Black, Petitioner Below, Appellee.

No. 445, 1995.

Supreme Court of Delaware.

Submitted: Oct. 1, 1996.

Decided: Dec. 6, 1996.

As Corrected Dec. 18, 1996.

Mark D. Sisk, Hughes, Sisk & Glancy, P.A., Wilmington, for Appellant.

Peter S. Feliceangeli (argued) and Elizabeth Alice Saurman, Deputy Attorneys General, Department of Justice, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH and BERGER, JJ.

WALSH, Justice:

This matter is before the Court as the result of the certification of four questions of law pursuant to Article IV, Section 11(9) of the Delaware Constitution and Delaware Supreme Court Rule 41. The questions of law were certified by the Family Court of the State of Delaware and were accepted by this Court by order dated December 18, 1995.

The primary issue to be addressed in this appeal concerns the right, if any, of an indigent obligor to have counsel appointed for him at public expense when faced with possible incarceration for failure to pay court ordered child support. The remaining three questions relate to: (i) the method for determining when a liberty interest is implicated in a civil contempt proceeding; (ii) the point in the proceeding at which the right to counsel attaches; and (iii) whether the Office of the Public Defender is precluded from representing an indigent defendant in civil contempt cases. Upon careful consideration of the parties' briefing and oral argument, the decision of this Court on the certified questions of law is as follows.

We hold that: an indigent obligor who faces the possibility of incarceration in a State initiated civil contempt proceeding does have a due process right to court appointed counsel: the right of a defendant to have counsel appointed should be determined on an individual case basis in accordance with the presumption announced in *Lassiter v. Department of Social Services of Durham County*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) and adopted by this Court; the right of a defendant to have counsel appointed in a civil contempt proceeding for a violation of a support order does not attach until the defendant is brought before a judicial officer who possesses the authority to incarcerate the defendant; and 29 *Del.C.* § 4602 prohibits the Office of Public Defender from representing defendants in civil contempt proceedings even if incarceration is a likely outcome.

I

James S. Black ("Father"), fathered six children with Aline Black ("Mother").[1] On July 30, 1993, in accordance with 13 *Del.C.* Ch. 5, Father was placed under a support order for the support of his six minor children. Mother receives Aid to Families with Dependant Children (hereinafter "AFDC") for the parties' children. As a result of paying AFDC benefits the State, through the Division of Child Support Enforcement ("DCSE"), has been subrogated to Mother's entitlement to child support. 42 U.S.C. §§ 654(4), 602(a)(26); 31 *Del.C.* § 504(a). It is alleged that Father has failed to remit payments in a timely fashion as required under the support order and has fallen into arrears on his child support obligation.[2]

On November 15, 1994, the DCSE filed a petition for a Rule to Show Cause why Fa-

---

1. The facts contained herein represent the undisputed facts as contained in the Family Court's certifying order and in the parties' briefs.

2. Father had failed to pay child support for his six children since September 3, 1993. As of June, 1995 Father owed the State of Delaware $7,730.44 as reimbursement for the AFDC benefits provided for the children.

ther should not be held in civil contempt for failure to comply with the court's July 30, 1993 Order. A hearing on Father's contempt petition was scheduled for January 30, 1995 and was subsequently rescheduled for June 21, 1995.[3] At that hearing, DCSE was represented by the Attorney General's Office and Father appeared *pro se.*

After the taking of testimony, the State requested that the court find Father in civil contempt of the support order and as a sanction, sought the Father's commitment to a work release program until such time as he was able to reduce the child support arrears by a sum certain.[4] In view of the Father's apparent indigency, the Family Court raised the issue of his possible right to counsel in a State-initiated civil contempt proceeding. In lieu of ruling on the contempt sanction, the Family Court requested this Court to consider the constitutional implications of Father's status. Counsel was appointed to brief and argue the Father's position in this Court.[5]

## II

■ The initial certified question of law to be addressed, and one of first impression in the State of Delaware, is whether an indigent support obligor who is faced with possible incarceration has a due process right to court appointed counsel in a State-initiated civil contempt proceeding. Our review of the decisional law of other jurisdictions as well as the relevant United States Supreme Court rulings persuades us that the first certified question must be answered in the affirmative.

■ The right to counsel in a civil contempt proceeding is derived from the Due Process Clause of the Fourteenth Amendment to the United States Constitution and is designed to protect the most cherished of liberty interests, personal freedom. *Lassiter,* 452 U.S. at 18, 101 S.Ct. at 2155. The method or manner of determining when the right to appointed counsel exists through due process, defies easy definition. Due process is not a quantifiable term which can be applied as a technical concept, fixed in content, unrelated to time and circumstance. *Little v. Streater,* 452 U.S. 1, 5, 101 S.Ct. 2202, 2205, 68 L.Ed.2d 627 (1981). Rather, it is flexible and demands such procedural protections as are called for by a particular situation. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ In the present context where the possibility of incarceration exists, due process may be viewed as analogous to the concept of "fundamental fairness," the driving force behind the requirement of appointed counsel for indigent defendants in criminal prosecutions. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Under *Gideon* and its progeny fundamental fairness required the appointment of counsel before an indigent defendant could be incarcerated, regardless of how brief the sentence imposed. The correlative concepts of due process and fundamental fairness appear equally applicable to civil proceedings which are likely to result in a period of incarceration. It is the defendant's interest in personal freedom as secured under the Due Process Clause which triggers the right to appointed counsel in a civil proceeding. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

The Supreme Court has long recognized that a bright line test for the appointment of counsel under the Due Process Clause may prove an unworkable concept. Instead the Court has developed a flexible standard to guide judges in determining whether the appointment of counsel is constitutionally re-

---

3. Father's failure to appear for the January hearing caused the court to issue a Capias for his arrest. On March 27, 1995, Father surrendered to authorities and was released on unsecured bail.

4. For the year 1995, the State successfully prosecuted 4,137 civil contempt actions in Family Court. Of those cases, 518 concluded with the defendant being sentenced to a period of incarceration, with sentence to be suspended upon the completion of certain requirements. Additionally, 282 of the contemptors were actually sentenced to a work release program until the contempt was purged.

5. Mark D. Sisk, Esquire has represented Father's interests in this certification proceeding, *pro bono publico.* The Court extends its appreciation for his services, which were rendered in the best tradition of the Delaware Bar.

quired. This rule is referred to as the *Lassiter* presumption:

> in sum, the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and *we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his personal liberty.* It is against this presumption that all the other elements of the due process decision must be measured.

*Lassiter,* 452 U.S. at 26–27, 101 S.Ct. at 2159 (emphasis added). In applying this presumption the Supreme Court has adhered to the idea that an indigent defendant who faces a significant likelihood of incarceration must be appointed counsel at State expense. *Id.*

■ This Court has ruled consistently that "due process of law" in the Federal Constitution is deemed to have substantially the equivalent meaning as the phrase "law of the land" in the Delaware Constitution.[6] *Opinion of the Justices,* Del.Supr., 246 A.2d 90 (1968); *Matter of Carolyn S.S.,* Del.Supr., 498 A.2d 1095 (1984). Thus we adopt the *Lassiter* presumption but conclude that there is no basis for enlarging this prescription under Delaware constitutional standards into a fixed rule of entitlement to counsel. *Matter of Carolyn S.S.,* at 1098.

■ Consistent with the Due Process Clause, the right to the appointment of counsel, transcends administrative or procedural distinctions in judicial proceedings. Therefore, the *Lassiter* presumption applies to all State-initiated contempt proceedings where the defendant is faced with the possibility of losing his personal freedom, regardless of whether the contempt hearing is styled civil or criminal. *See, Gault,* 387 U.S. at 1, 87 S.Ct. at 1428. We recognize that to maintain the orderly administration of justice, there may continue to be valid reasons for labeling

one contempt hearing civil and another criminal. *See DiSabatino v. Salicete,* Del.Supr., 681 A.2d 1062 (1996). For purposes of the due process analysis, however, the lynchpin for determining if counsel must be appointed continues to be the risk of incarceration faced by the indigent obligor.

## III

■ Having determined that due process may require the appointment of counsel we now focus on the proper application of this presumption to the facts of a given situation. The right to the appointment of counsel for an indigent obligor should be determined on an individual case basis in accordance with the *Lassiter* presumption as adopted by this Court. Since *Lassiter* presumes an entitlement to court appointed counsel only when a defendant is faced with the possible deprivation of his physical liberty, the trial judge is obligated to determine in the first instance whether the defendant faces the possibility of incarceration. If he does, the presumption attaches and due process requires counsel be appointed for the indigent obligor.

■ It should be noted that, as a defendant's interest in personal liberty diminishes, so too do the due process safeguards to "fundamental fairness." *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Stated differently, an indigent defendant *may not* be incarcerated if he was unrepresented during the civil contempt hearing. Thus, if the State seeks a punishment of something less than incarceration the presumption is inapplicable and the appointment of counsel may not be required. If the State eschews incarceration as a sanction, the burden is on the indigent defendant to demonstrate an entitlement to appointed counsel, by invoking the remaining elements of the due process analysis under *Lassiter. Lassiter* at 31, 101 S.Ct. at 2161–62.[7] In

---

**6.** Del. Const. Art. I, § 9 provides:

> "* * * every man for an injury done him in his reputation, person, moveable or immoveable possessions, shall have a remedy by the due course of law, and justice administered accordingly *to the* very right of the cause, and the *law of the land* * * *" (emphasis supplied)

**7.** The State's decision not to pursue incarceration may preclude the need for an automatic appointment of counsel but this is not conclusive on the need to appoint counsel. It is within the province of the court to determine an appropriate punishment and the court is free to impose a period of incarceration irrespective of the State's position. Thus, the court must independently

*Allen v. Division of Child Support Enf.,* Del. Supr. 575 A.2d 1176, 1178 (1990), this Court noted that the elements which may serve to rebut the *Lassiter* presumption, as derived from the Supreme Court's holding in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), are: (i) the private interests that will be affected by official action; (ii) the risk that the procedures will lead to erroneous deprivation of such interests; and (iii) the State's interest including the fiscal and administrative burdens that the additional procedures will entail.

■ If after weighing these factors a court determines that, as a matter of due process and fundamental fairness, the defendant should be represented, then counsel should be appointed even if a loss of physical liberty is not threatened. In balancing the *Mathews* factors against the *Lassiter* presumption, a court should be sensitive to protecting the due process rights of the indigent defendant. Should one side of the analysis not clearly outweigh the other, the court should err on the side of appointing counsel in order to further the due process right to fundamental fairness in judicial proceedings.

### IV

■ The third certified question of law concerns the point at which, in a civil contempt proceeding in Family Court, counsel should be appointed for the indigent defendant. We understand that the Family Court has instituted a two tier procedure for the prosecution of civil contempt proceedings. During the first step of the process, a defendant is brought before a Family Court Master who makes the initial contempt determination. If the Master concludes that the defendant has willfully disregarded prior court orders or has previously been found in contempt, the defendant's file is "red tagged"

and a hearing is scheduled before a Family Court judge.[8] The second phase of the procedure consists of the hearing before a judge where, if the defendant is found in contempt, an appropriate punishment is imposed.

It is important to note that, pursuant to 10 *Del.C.* § 913(c), masters are not permitted to enter orders of incarceration and a defendant cannot be incarcerated until after he is afforded a hearing before a Family Court judge. For this reason we conclude that counsel need not be appointed during the first level of the contempt procedure conducted by a master. At this point the defendant is statutorily protected from being incarcerated and no tangible threat exists to his personal liberty.[9] In essence, the master functions as a gatekeeper, who sifts through a large number of contempt petitions and forwards the most egregious cases to a Family Court judge for a hearing.

Since there is no threat to a defendant's personal liberty when he stands before a master, principles of fundamental fairness are not in jeopardy and, therefore, a defendant's right to appointed counsel does not exist. Should a defendant object to the findings of the master, he is entitled to request a hearing *de novo* before a Family Court judge. In that event, the right to counsel would attach if the indigent faces a significant likelihood of incarceration.

### V

■ The fourth and final certified question requires this Court to interpret 29 *Del.C.* § 4602, the statute which establishes the Office of Public Defender and enumerates its powers. The issue raised is whether section 4602 may be interpreted to permit the appointment of the public defender in civil contempt cases. Section 4602 states in part "[the Office of Public Defender] shall repre-

assess the probability of incarceration and determine if under a due process analysis counsel should be appointed.

8. The term "red tagged" refers to the Family Court practice of actually placing a red tag on a defendant's file. This is done when a defendant has been found in contempt on prior occasions, the contempts were willful and a subsequent contempt petition is filed against the defendant.

9. This situation is distinguishable from a scenario where the State does not seek incarceration but the court may find the need to appoint counsel because the possibility of incarceration exists. Before a master the State's position on incarceration is irrelevant in view of the limitation on the master's authority.

sent, ... each indigent person who is under arrest or charged with a crime...." The statute is clear on its face and leads to the conclusion that the Office of the Public Defender is restricted to the handling of criminal cases. Notwithstanding the risk of incarceration which may exist in civil contempt proceedings, we cannot construe the statute to alter its plain meaning. Thus, the Public Defender may not be appointed to represent indigent defendants in civil contempt proceedings arising out of support orders.