**Robert E. EATON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 412, 1996.**

Supreme Court of Delaware.

Submitted: Oct. 21, 1997.
Decided: Dec. 8, 1997.

Bernard J. O'Donnell, Assistant Public Defender, Wilmington, for appellant.

Kim Ayvazian, Deputy Attorney General, Georgetown, for appellee.

Before VEASEY, C.J., HOLLAND and BERGER, JJ.

HOLLAND, Justice:

The defendant-appellant, Robert E. Eaton ("Eaton"), was initially charged with Assault in the Second Degree, a felony, and released on bail. One of the conditions in Eaton's bail bond was for him to have "no contact" with the alleged assault victim. 11 *Del.C.* § 2108(a)(5). Eaton was subsequently arrested and charged with three separate breaches of this "no contact" condition in his bail bond.

The original assault charge and the three breach of release offenses were consolidated for trial in the Superior Court. The jury acquitted Eaton of the felonious assault charge and also acquitted him of two charges that he violated the "no contact" condition of release in his bail bond. Eaton was convict-

ed of the remaining breach of the "no contact" condition. Eaton's conviction constituted a felony, pursuant to 11 *Del.C.* § 2113(c)(1).

Eaton has raised one issue in this direct appeal. Eaton argues that the statutory designation of his conviction as a felony was erroneous, as a matter of law, because he was acquitted of the underlying felony assault charge that was the basis for the "no contact" condition of release in his bail bond. Eaton argues that this Court should, therefore, either reverse his conviction or reduce his conviction to a misdemeanor.

■ Eaton did not present these objections to the Superior Court. Accordingly, Eaton must demonstrate plain error to obtain appellate review of his sentence. Supr. Ct.R. 8. *See Wainwright v. State,* Del.Supr., 504 A.2d 1096 (1986). This Court has concluded that Eaton has not met that burden in this appeal.

### Facts

On the morning of November 25, 1995, Laura Callahan ("Callahan") went to the apartment belonging to her neighbor, Kathy Skinner ("Skinner"). Callahan told Skinner that her boyfriend, Eaton, had beaten her and broken her neck. Callahan used Skinner's telephone to call the police for help.

Chief Topping of the Felton Police Department responded to Callahan's telephone call. When he arrived at the Felton Peach Tree Apartments, Callahan told him that she wanted Eaton to leave her apartment. Callahan also advised Chief Topping, however, that Eaton had not beaten her.

Skinner took Callahan to the hospital. Callahan told the emergency room physician that her boyfriend had twisted her neck and kicked her in the thigh. Callahan was diagnosed as having two cervical fractures. Callahan was transferred to another hospital to be treated by a neurosurgeon.

While Callahan was still at the first hospital, she stated that she did not want the law enforcement authorities notified of her injuries. She further stated that if the police were called, she would deny that Eaton had caused her injuries. When Chief Topping arrived at the hospital, Callahan told him that she had fallen down the stairs.

Chief Topping obtained a warrant for Eaton's arrest for Assault in the Second Degree. Following his arrest, Eaton was taken to the Justice of the Peace Court. Eaton was arraigned and the terms and conditions of his secured bond were set by the Magistrate. Callahan provided the bond money to secure Eaton's release on bail.

One of the conditions of release in the bail bond was that Eaton have no contact with Callahan. Nevertheless, following Eaton's release on bail, Callahan visited him frequently at his temporary residence. On May 4, 1996, an officer of the Camden–Wyoming police saw Callahan and Eaton together on Route 13 in front of the Shamrock Hotel in Camden. Eaton was arrested for violating the "no contact" condition of release in his bail bond on that day and on two other occasions.

Eaton was jointly tried for the three breach of release charges and the initial charge of feloniously assaulting Callahan. At trial, Callahan testified that on November 24, 1995, she had hitchhiked home from work and was given a ride by a man who tried to molest her. Callahan testified that her neck was broken in the ensuing struggle with that unknown man. Callahan denied that Eaton had broken her neck. She testified that she only implicated Eaton because she was drunk.

Callahan admitted that she had seen Eaton several times following his release on bail. Callahan also acknowledged that she had spent the night with Eaton at the Shamrock Hotel. Callahan testified that she had initiated some of the post-release contact with Eaton.

Eaton testified in his own defense. With regard to the assault charge, Eaton denied having any physical altercation with Callahan on November 24–25, 1995. With regard to violating the "no contact" condition of his bond, Eaton testified that he knew he was not supposed to have any contact with Callahan. Eaton admitted having several contacts with Callahan at various locations, including his temporary residence. Eaton also admit-

ted that he spent the night with Callahan at the hotel on May 3, 1996.

The jury acquitted Eaton of Assault in the Second Degree and two counts of noncompliance with the "no contact" condition of release in the bail bond. Eaton was found guilty, however, of one count of noncompliance with the condition that he have "no contact" with Callahan. That conviction constituted a felony because the original underlying assault charge was a felony.

Eaton was fined $200. He was also sentenced to two years of imprisonment at Level V. That period of incarceration was suspended after twelve months for twelve months of supervision at Level III.

### Felony or Misdemeanor
### Breach of Release Condition

Eaton was charged with the three counts of breaching a condition of his bail bond. 11 Del.C. § 2113 ("Section 2113").[1] If the release of an accused is "in connection with 1 or more charges of a felony prior to trial," conviction for a breach of the release condition is a felony punishable by up to five years imprisonment and a $5,000 fine. 11·Del.C. § 2113(c)(1). If the release is "in connection with 1 or more charges of misdemeanor prior to trial," conviction for breach of a release condition is a misdemeanor punishable by up to one year imprisonment and a fine of $500. 11 Del.C. § 2113(c)(2).

Eaton was convicted of *felony* breach of release, rather than a misdemeanor breach of release, because of the underlying allegation that he had committed Assault in the Second Degree, a Class D felony. The record reflects that Eaton was acquitted, however, of the underlying felonious offense of Assault in the Second Degree. Eaton contends, there-

fore, that he should have been sentenced for the misdemeanor offense of noncompliance with a condition in his bail bond. According to Eaton, "the permissible basis for enhanced felony punishment dissipated" upon his acquittal on the underlying felony offense of assault.

### Breach of Release
### Separate Statutory Crime

■ The primary issue presented on appeal is whether the outcome of the underlying offense has any effect upon the statutory offense of breach of condition of release. Although the question presented in this appeal appears to be an issue of first impression for Delaware, other jurisdictions have held that a violation of a bond condition is a separate and distinct offense that is not dependent upon the outcome of the underlying charge. *See, e.g., State v. DeAtley,* 11 Kan. App.2d 605, 731 P.2d 318, 323 (1987); *Small v. State,* Tex.App., 692 S.W.2d 536, 540 (1985); *People v. Holcombe,* 89 A.D.2d 644, 453 N.Y.S.2d 126, 127 (1982); *State v. Aranda,* 94 N.M. 784, 617 P.2d 173, 176 (1980); *Williams v. United States,* D.C.App., 331 A.2d 341, 342 (1975); *People v. Minefee,* 14 Ill.App.3d 796, 303 N.E.2d 591, 594 (1973). We find the rationale of those cases to be persuasive.

■ The General Assembly has broad authority to define crimes. *Taylor v. State,* Del.Supr., 679 A.2d 449, 454 (1996). Subject to State and Federal Constitutional limitations, "the creation and definition of crimes under Delaware law is a matter for legislative enactment either through the 'Criminal Code or by another law.'" *Id.* (*quoting* 11 Del.C. § 202(a)). Consequently, we hold that the Superior Court properly sentenced Eaton

---

1. Section 2113 of Title 11 of the Delaware Code provides, in pertinent part:

    (c) If the accused knowingly fails to appear as required or knowingly breaches any condition of release, each such failure or breach shall be a separate crime, and upon conviction thereof shall be punished as follows:

    (1) If the person was released in connection with 1 or more charges of a felony prior to trial, or while awaiting sentence or pending appeal or certiorari after conviction of 1 or

    more felonies or misdemeanors, the person shall be guilty of a felony and punished by imprisonment of not to exceed 5 years or a fine of $5,000, or both;

    (2) If the person was released in connection with 1 or more charges of misdemeanor prior to trial, the person shall be fined not more than $500 or imprisoned not more than 1 year, or both.

    11 Del.C. § 2113(c).

for the offense of failure to comply with the conditions of release in his bail bond, even though Eaton was acquitted of the assault charge that led to his arrest and release on bail. *See* 11 *Del.C.* § 2113(c)(1).[2]

Eaton was released on secured bond and awaiting trial on the assault charge when he knowingly violated a condition of his bond by having contact with Callahan, the alleged victim of the assault. The fact that Eaton was acquitted of the underlying felony offense of Assault in the Second Degree had no effect on the separate and distinct offense of noncompliance with a condition of release in his bail bond. Eaton's conviction was supported by the evidence and his sentence was within the statutory limits for the felony offense of noncompliance. It will not be disturbed by this Court on appeal. *Siple v. State*, Del.Supr., 701 A.2d 79, 83 (1997); *Mayes v. State*, Del.Supr., 604 A.2d 839, 842 (1992).

### *Felony Designation*
### *Legislative Prerogative*

■ Eaton's alternative or secondary argument is that, even if his conviction was valid, the offense should be denominated as a misdemeanor rather than a felony. When crimes were classified by the common law, there was a great disparity between punishments for misdemeanors and felonies. *Carroll v. United States*, 267 U.S. 132, 158, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925). At common law, "[n]o crime was considered a felony which did not occasion a total forfeiture of the offender's lands or goods or both." *Kurtz v. Moffitt*, 115 U.S. 487, 499, 6 S.Ct. 148, 152, 29 L.Ed. 458 (1885); 4 William Blackstone, *Commentaries* *95. Therefore, "[o]nly the most serious crimes were felonies at common law...." *United States v. Watson*, 423 U.S. 411, 439, 96 S.Ct. 820, 835, 46 L.Ed.2d 598 (1976) (Marshall, J., dissenting).

■ At the present time in the United States, most crimes are defined by statute. Moreover, the legislature has broad discre-

tion in classifying the statutory offenses it enacts as either felonies or misdemeanors. *Carroll v. United States*, 267 U.S. at 158, 45 S.Ct. at 287. The evolution of America's criminal jurisprudence has virtually eliminated the bright line distinction between felonies and misdemeanors that once existed at common law.

Many crimes are now classified as felonies, by state and federal statutes, that were common law misdemeanors. *United States v. Watson*, 423 U.S. at 439–40, 96 S.Ct. at 835–36 (Marshall, J., dissenting). The United States Code provides that *"[a]ny* offense punishable by death or imprisonment for a term exceeding one year is a felony." 18 U.S.C. § 1(1) (emphasis added). In many states, any crime punishable by death or imprisonment is a felony. *United States v. Watson*, 423 U.S. at 439 n. 5, 96 S.Ct. at 835 n. 5 (Marshall, J., dissenting).

### *Breach of Release Classifications*
### *Reasonable Distinction/Fair Warning*

The General Assembly codified Delaware's criminal law in 1973. Transgressions of the Criminal Code are classified as either felonies, misdemeanors, or violations. 11 *Del.C.* § 233(c). There are seven subdivisions for felonies in Section 4201(a)(1–7) of the Delaware Criminal Code.

■ One of the specific purposes of completely codifying Delaware's Criminal Code was "[t]o differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties...." 11 *Del.C.* § 201(4). Another purpose of Delaware's Criminal Code is "[t]o give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction." 11 *Del.C.* § 201(2). The distinctions are reasonable and the warnings are explicit in Section 2113(c).

Any person released on bail must adhere to the conditions set forth in his or her bond. The Delaware Criminal Code is intended

---

**2.** This Court recently held that an appellant who breached the conditions of a Stay Order during the pendency of an appeal to this Court was properly subjected to punishment for that viola-

tion, without consideration of the appellant's success on the merits of the appeal. *DiSabatino v. Salicete*, Del.Supr., 681 A.2d 1062 (1996).

"[t]o insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized...." 11 *Del.C.* § 201(5). The violation of a "no contact" condition in a bail bond can result in serious personal injury or death. It was logical and proportionate for the General Assembly to make the classification for violating any condition of release commensurate with the nature of the pending charge. *Cf. DeShields v. State,* Del.Supr., 534 A.2d 630, 647 (1987). The felony/misdemeanor designation in Section 2113(c) was a proper exercise of the legislative authority vested in the General Assembly by Article II of the Delaware Constitution.

### Conclusion

The judgment of the Superior Court is affirmed.