John A. WALKER,[1] Respondent
Below, Appellant,

v.

Amy C. WALKER, Petitioner
Below, Appellee.

No. 37, 2005.

Supreme Court of Delaware.

Submitted: Dec. 14, 2005.
Decided: Feb. 9, 2006.

D. Benjamin Snyder, Esquire, of Prickett, Jones & Elliott, P.A., Dover, Delaware, for Appellant.

Glynis Gibson, Esquire (argued), and Jennifer G. Nowak, Esquire, of Gibson & Nowak, Dover, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en banc.

BERGER, Justice:

In this appeal, we address a parent's right to counsel in a termination of parental rights proceeding initiated by a private party. Although a parent has no absolute right to the appointment of counsel, our courts routinely grant indigent parents' requests in dependency and neglect proceedings and in termination of parental rights proceedings initiated by the State of Dela-

---

1. The names of the parties are pseudonyms assigned by the Court pursuant to Supreme Court Rule 7.

ware.[2] In fact, Family Court Rule 207 now provides for the appointment of counsel, upon request, in proceedings involving dependent, neglected or abused children in State custody. The termination of parental rights proceeding in this case, however, was initiated by the child's aunt, without State involvement. Father, who was unrepresented, was never told that he could request court-appointed counsel, and the trial court never conducted a hearing to determine whether the appointment of counsel at State expense was warranted. Because the jeopardy to the parent's rights is identical, we hold that a parent's right to seek court-appointed counsel is the same regardless of who initiates a termination proceeding. Accordingly, we reverse the Family Court's judgment and remand for further proceedings.

### Factual and Procedural Background

John A. Walker and Connie Lawson are the natural parents of John A. Walker, who was born in August 1998. Father and Mother both cared for John until December 1999, when Father was arrested. Apparently Mother was unable to care for John without Father, as John's paternal grandmother was given custody of him. At grandmother's request, John's aunt, Amy C. Walker, took over as John's caregiver early in 2000. Aunt and Mother both lived with John in Father's former residence for a few months. After a dispute of some kind, Aunt refused to allow Mother back into the home, and Aunt filed a dependency/neglect petition for custody of John. Both Mother and Father opposed the petition, but the Family Court awarded custody to Aunt in December 2001.

In May 2003, Aunt filed this petition to terminate both Mother's and Father's parental rights. Mother consented to the petition, but Father opposed it and attempted to represent himself in the two-hour termination hearing. Four witnesses testified at the hearing. Crystal Connolly, a social worker at Catholic Charities, prepared a report recommending termination of Father's parental rights and adoption by Aunt. Father attempted to cross examine Connolly, but the trial court sustained objections to many of his questions. Frustrated, Father concluded his examination by saying, "...I mean I don't know the scope of what you all do but it seems like it's obvious it's not—it's not—no further questions."

Father was the second witness. He testified that he was incarcerated for violating parole and trafficking in cocaine. As of the hearing date, he had five years remaining on his sentence. Father explained that he sees his son whenever his mother can bring him to the prison and that he speaks with John on the telephone every few weeks. Father acknowledged that he has not been providing any support for his son, but insisted that he would be paying back child support as soon as he is released from prison and able to earn money. When given the chance to speak on his own behalf, Father basically argued that there was no reason to terminate his parental rights because Aunt already had custody and, as a result, John was in a stable family environment.

Aunt testified next. She said that she was concerned about John staying with Mother because Mother has a pit bull and does not supervise John adequately. Aunt also testified about John's activities, friends, and general well-being. Father attempted to find out why Aunt was trying to push Father out of the family relationship, but he gave up after only a few questions. The final witness was Father's

**2.** *Watson v. Division of Family Services,* 813    A.2d 1101 (Del.2002).

daughter, who, along with Father's oldest son, had been raised by Aunt. She testified that John enjoys living with Aunt and that John sees the rest of Father's family on a regular basis. Father asked no questions.

The Family Court held that termination was warranted because Father had failed to plan for John's physical needs as well as his mental and emotional health. The trial court concluded that "it is impossible to provide the needed parental support required for a child from prison," and that John should not have to wait another five years for "permanency." The trial court did not address what appears to have been Father's argument that John is in a stable and permanent relationship with Father's family (especially Aunt) and that termination, therefore, is not an appropriate remedy.

### Discussion

■■■ In *Watson v. Division of Family Services,*[3] this Court reviewed the case law governing an indigent parent's right to counsel in matters relating to child custody:

> [E]ven two decades ago, courts generally ruled that counsel must be appointed for indigent parents in termination proceedings. At the present time, forty-five states required the appointment of counsel in termination of parental rights proceedings. Delaware remains one of the few states to continue to use the case-by-case approach.

> \* \* \*

In [*Brown v. Div. of Family Services*], this Court held that the due process guarantee in . . . the Delaware Constitution requires that notice of the right to counsel and how to exercise that right must be given to parents when a petition is filed for the termination of parental rights. In this appeal, we hold that the same due process guarantee in the Delaware Constitution requires similar notice to be given to parents when a petition for dependency and neglect is filed.

\* \* \*

In fact, today's holding is consistent with the current practices and rules of the Family Court. At the present time, the Family Court routinely appoints counsel to represent indigent parents in dependency and neglect proceedings.[4]

The analysis in *Watson,* and its predecessors, recognized a parent's compelling interest in maintaining a familial relationship with his or her child. That compelling interest does not diminish where the termination proceedings are initiated by a private party rather than the State. Accordingly, we hold that the trial court must advise parents of their right to seek court-appointed counsel and must determine whether to appoint counsel, if requested, in *all* termination proceedings.[5]

■■■ The remaining question is whether the failure to appoint counsel for Father impacted the termination decision in any substantial way. In *Hughes v. Division of Family Services,*[6] this Court affirmed the Family Court's determination that the failure to appoint counsel for a parent at the beginning of the dependency and neglect

---

**3.** 813 A.2d 1101 (2002).

**4.** *Id. at* 1107–09 (Citations omitted.).

**5.** Father's appeal did not raise the issue of right to counsel in a privately initiated dependency and neglect proceeding. Thus, the fact

that our holding does not address that question should not be read as an indication that this Court takes a different view of the right to counsel at that stage.

**6.** 836 A.2d 498 (Del.2003).

proceedings was harmless error. In *Hughes,* as in this case, the parent was incarcerated, and had no counsel during the earlier proceedings. The parent was represented at the termination hearing, however, and the trial court concluded that representation at the earlier stage would not have changed the outcome of the termination proceeding.

In this case, we are satisfied that the outcome *might* have been different if Father had been represented by counsel. First, the record of the termination hearing establishes that Father was unable to effectively present his position or examine the witnesses against him. Second, there is a real question about whether termination of Father's parental rights is the only, or the appropriate, disposition. John could continue in a secure, permanent relationship with Aunt through a guardianship, for example, without losing the relationship he has with his Father. Although Aunt may prefer to adopt John, she never really had to consider any alternatives because Father was not in a position to present them.

### Conclusion

Based on the foregoing, the judgment of the Family Court is REVERSED and this matter is REMANDED for further action in accordance with this opinion. Jurisdiction is not retained.