**In the Matter of F.C.[1], Petitioner,**

v.

**B.C., Respondent.**

**File No. CS08–03564.
Petition No. 13–00840.**

Family Court of Delaware,
Sussex County.

Submitted: Jan. 28, 2013.
Decided: March 7, 2013.

---

**33.** Super. Ct. Cr. R. 61(i)(3).

**34.** Super. Ct. Cr. R. 61(A),(B); Super. Ct. Cr. R. 61(i)(5).

**1.** Pseudonyms have been used for the names of the parties and other persons involved as needed to protect identity pursuant to Delaware Supreme Court Rule 7(d).

Jennifer Davis Oliva, Esquire, Cooley, Manion, & Jones, L.L.P., Wilmington, Delaware, for Petitioner F.C.

B.C., New Castle, Delaware, pro se.

**REQUEST FOR REVIEW OF COMMISSIONER'S ORDER**

## OPINION

JONES, Judge:

Pending before the Court is a Request for Review of Commissioner's Order ("Request for Review") filed by B.C. ("Husband"). Husband objects to a Protection from Abuse ("PFA") Order entered by a Commissioner of this Court on January 18, 2013. The Commissioner entered a finding by a preponderance of the evidence that Husband had committed an act or repeated acts of domestic violence against F.C. ("Wife"). Wife did not file a Response to Husband's Request for Review.

### Background

Husband and Wife were married in June 2002, and were divorced by a final decree of this Court on November 17, 2010. The parties have two minor children born of

the marriage. On January 11, 2013, Wife filed a Petition for PFA against Husband, as well as an Affidavit for Emergency *Ex Parte* Order. The Court entered a Temporary Emergency *Ex Parte* PFA Order on January 11, 2013, and scheduled a hearing on the Petition for PFA for January 18, 2013.

Husband and Wife appeared for the hearing on January 18, 2013. Wife was represented by counsel at this hearing, but Husband appeared *pro se*. Wife and Wife's mother testified on behalf of Wife at the hearing, and additionally, Wife called Husband's paramour, E.W., as a witness.[2] Husband did not testify, and did not call any witnesses on his own behalf. After hearing the evidence, the Commissioner stated that she would only consider the testimony of Wife and Wife's mother in making her decision. The Commissioner found by a preponderance of the evidence that Husband had committed abuse under Title 10, Section 1041 of the Delaware Code by engaging in a course of alarming or distressing conduct likely to cause fear or emotional distress, and conduct a reasonable person under the circumstances would find threatening or harmful. The Commissioner entered the Order granting a PFA against Husband on January 18, 2013. The PFA protects both Wife and the children, and orders that Husband may not commit any acts of abuse towards Wife or the minor children.

Husband filed the present Request for Review on January 28, 2013, objecting to the Commissioner's January 18, 2013 Order on numerous grounds. In particular, Husband argues that: (1) The Commissioner erred in her finding of domestic violence by a preponderance of the evidence; (2) Wife lied under oath[3]; (3) The Commissioner disregarded witness's statements that defended Husband from allegations of abuse; (4) Husband was not afforded an opportunity for a continuance to obtain legal representation; (5) Wife's attorney entered her appearance the morning of the hearing; (6) The Commissioner did not acknowledge Husband's lack of legal representation; (7) No evidence was presented by Wife which substantiated her allegations of abuse "in her ex parte statement on her sworn statement"[4]; and (8) Wife did not present any police reports documenting any allegations of domestic violence.

### Standard of Review

The Delaware Code confers upon this Court appellate jurisdiction over a Commissioner's Order. Specifically, the Code provides that "[a]ny party, except a party in default of appearance before a Commissioner, may appeal a final order of a Commissioner to a Judge of the Court."[5] A Commissioner's Order may be appealed to a Judge of the Court within 30 days by filing written objections setting forth with particularity the basis of each objection of the Commissioner's Order.[6] From an ap-

---

**2.** Wife did not subpoena E.W.; however, E.W. appeared voluntarily at the Courthouse with Husband on the morning of the hearing, so Wife called E.W. as a witness in the proceeding.

**3.** In his Request for Review, Husband seems to refer to both himself and Wife as "Petitioner." In his objection number 2, Husband states "Petitioner lied under oath." However, throughout the rest of the Request for Review, Husband refers to himself as "Peti-

tioner" and Wife as "Respondent." The Court takes Husband's second objection as an argument that *Wife* lied under oath.

**4.** *See* Resp't Request for Review of Commissioner's Order, January 28, 2013.

**5.** DEL.CODE ANN. tit. 10, § 915(d)(1) (2012).

**6.** DEL.FAM. CT. R. CIV. P. 53.1(b).

peal of a Commissioner's Order, this Court must make a *de novo* determination based on the record below.[7] In making a *de novo* determination, an appellate court is to use the trial court's record, but review "the evidence and law without deference to the trial court's ruling."[8] When reviewing a Commissioner's Order, although the Family Court is not bound by the Commissioner's findings of fact, the Court will give weight to the factual findings of the Commissioner, especially in regards to the credibility of witnesses.[9] The Court will place great weight on a Commissioner's findings of credibility of witnesses, as the parties and witnesses were before the Commissioner for trial, and the Commissioner had the opportunity to observe the demeanor of the parties and witnesses at trial.[10]

A Judge deciding an appeal from a Commissioner's Order may accept, reject, or modify, in whole or in part, the Commissioner's Order.[11]

### Facts

After reviewing the transcript from the January 18, 2013 hearing, the Court finds the facts in this case to be as follows: Husband and Wife separated in 2008. As of the date of the hearing, Husband was a New Castle County police officer, but was suspended due to a police report Wife had filed against Husband on December 25, 2012. Wife testified that Husband has a history of yelling and screaming when he gets upset about things, or when he does not get his way.[12] Additionally, Wife's mother testified that Husband has a history of screaming and yelling at Wife, and calling Wife names via the telephone, text messages, and e-mail.[13] Prior to the parties' separation in 2008, Husband learned that Wife was having an affair and was going to leave him.[14] At that time, an incident occurred in the home where Husband, in his police uniform, followed Wife around and continued to yell at her while keeping his hand on his weapon.[15] During this incident, Husband called Wife's mother, who then called the police when she heard Husband screaming.[16]

On December 22, 2012, Husband repeatedly sent numerous text messages to Wife regarding information unrelated to the children, despite Wife's requests that he stop.[17] This prompted Wife to go to Troop 7 of the Delaware State Police for advice on how to get Husband to stop sending Wife the text messages. A sergeant at Troop 7 advised Wife that if Husband continued to contact Wife about anything unrelated to the children, to advise Husband that Troop 7 had advised Wife to tell Husband that he was not to contact Wife about anything unrelated to

7. DEL. FAM. CT. R. CIV. P. 53.1(e).

8. *D.H.M. v. D.T.M.*, No. CN–12–07323, 2012 WL 5844912, at *1 (Del.Fam.Ct. Sept. 18, 2012) (citing *State v. M.S*, No. 0605008568, 2006 WL 4546614, at *1 (Del.Fam.Ct. Sept. 8, 2006)).

9. *See C.A. v. C.A.*, No. CN06–04047, 2007 WL 4793921 at *1 (Del.Fam.Ct. April 3, 2007).

10. *See D.H.M.*, 2012 WL 5844912, at *2 (citing *F.C. v. E.M.*, No. CN99–11286, 2002 WL 32101207, at *1 (Del.Fam.Ct. Dec. 20, 2002)).

11. DEL FAM. CT. R. CIV. P. 53.1(g).

12. PFA Hr'g Tr. 15: 5–6, Jan. 18, 2013.

13. PFA Hr'g Tr. 31: 10–21, Jan. 18, 2013.

14. PFA Hr'g Tr. 20: 14–17, Jan. 18, 2013.

15. *Id.*

16. PFA Hr'g Tr. 17: 6, Jan. 18, 2013.

17. PFA Hr'g Tr. 6: 6–8, Jan. 18, 2013.

the children.[18] Wife also contacted Husband's superior at the New Castle County Police Department that evening, who indicated to Wife that he would have a conversation with Husband and advise him that he was not to contact Wife about anything other than the children.[19]

On December 24, 2012, Husband made repeated phone calls to Wife's cell phone to speak with the children. Husband spoke with the parties' son, who indicated to Husband that the parties' daughter was in the shower, but that she would call Husband when she was out of the shower.[20] However, Husband continued to call Wife's cell phone, approximately five times in a ten-minute period.[21] Each time, the parties' son would answer and indicate to Husband that the parties' daughter was still in the shower, and would then hang up on Husband. On the last phone call, Husband began to scream on the phone to the parties' son, and Wife encouraged the parties' son to hang up the phone.[22] Wife then sent Husband a text message telling Husband not to yell at the parties' son, and also advising him that Wife had been advised by Troop 7 to tell Husband he was not to contact Wife about anything else other than the children.[23] From that point, Husband sent numerous and repeated text messages to Wife, prompting Wife to revisit Troop 7 that evening to file a harassment report against Husband.[24]

When Wife went to Troop 7 on the evening of December 24, 2012, she met with another officer, who viewed her cell phone and the text messages Husband had sent Wife.[25] This officer indicated that he would be filing a report, and would also be contacting Husband's superiors and Husband himself to tell Husband that he was not permitted to contact Wife regarding anything other than the children.[26] Later that evening, upon learning that Wife had gone to the police, Husband sent an e-mail to Wife and Husband's parents, indicating that he wanted no further contact with Wife and wanted all communication between him and Wife to go through his parents.[27]

On January 10, 2013, Husband was suspended from his position as a New Castle County police officer.[28] On that same date, Wife was contacted by the Delaware State police, who advised her that they were planning on following through with harassment charges against Husband, and that they had been in contact with Husband's superiors in New Castle County, who indicated that they were relieving Husband of his duties and taking his work equipment.[29] That evening, Husband sent Wife an e-mail through his parents indicating that he did not want any future contact with his children whatsoever.[30]

Wife testified that after Husband was suspended from his position in New Castle County, she was concerned for her safety.

18. PFA Hr'g Tr. 6: 14–18, Jan. 18, 2013.

19. PFA Hr'g Tr. 6: 18–20, Jan. 18, 2013.

20. PFA Hr'g Tr. 7: 7–13, Jan. 18, 2013.

21. PFA Hr'g Tr. 8: 14–15, Jan. 18, 2013.

22. PFA Hr'g Tr. 7: 17–20, Jan. 18, 2013.

23. PFA Hr'g Tr. 8: 1–3, Jan. 18, 2013.

24. PFA Hr'g Tr. 9: 3–4; 26: 7, 18, Jan. 18, 2013.

25. PFA Hr'g Tr. 9: 2–4, Jan. 18, 2013.

26. PFA Hr'g Tr. 9: 4–6, Jan. 18, 2013.

27. PFA Hr'g Tr. 9: 10–14, Jan. 18, 2013.

28. *See* PFA Hr'g Tr. 13: 13–15; 18–20, Jan. 18, 2013.

29. PFA Hr'g Tr. 13: 9–15, Jan. 18, 2013.

30. PFA Hr'g Tr. 9: 15–17, Jan. 18, 2013.

Wife stated that being a police officer is very important to Husband, and because he had a history of getting angry at Wife, she was afraid he would "come after her" after he was suspended from his job based on her allegations.[31] Wife's mother also testified that she is afraid of Husband, as he often screams and yells and makes threats[32], and that she believes the children are afraid of Husband,[33] and believes Wife is very afraid of Husband[34]. Accordingly, on January 11, 2013, Wife filed the Affidavit for Emergency *Ex Parte* Order and Petition for PFA.

### Discussion

Because some of Husband's arguments are repetitive and deal with the same legal standards, the Court will address some of Husband's objections together.

I. THE COMMISSIONER DID NOT ERR IN DE-TERMINING BY A PREPONDERANCE OF THE EVIDENCE THAT HUSBAND COMMITTED DO-MESTIC VIOLENCE

 Husband first argues that the Commissioner erred in her ruling, as Wife did not prove by a preponderance of the

31. *See* PFA Hr'g Tr. 13: 23–25; 14: 1–2, Jan. 18, 2013.

32. PFA Hr'g Tr. 32: 18; 33: 9–12, Jan. 18, 2013.

33. PFA Hr'g Tr. 32: 23–24, Jan. 18, 2013.

34. PFA Hr'g Tr. 33: 6–8, Jan. 18, 2013.

35. DEL.CODE ANN. tit. 10, § 1041(1) (2013) states that "abuse" is conduct which constitutes the following:
 a. Intentionally or recklessly causing or attempting to cause physical injury or a sexual offense, as defined in § 761 of Title 11;
 b. Intentionally or recklessly placing or attempting to place another person in reasonable apprehension of physical injury or sexual offense to such person or another;

evidence that Husband committed domestic violence. In particular, Husband also argues that during the hearing, Wife lied under oath, and the Commissioner disregarded witness statements that defended Husband from allegations of abuse. Additionally, Husband argues that Wife did not present evidence that substantiated her allegations, and did not present any police reports documenting allegations of domestic violence. The Court rejects these arguments, and finds that Wife presented sufficient evidence at the PFA hearing to prove that Husband committed an act or acts of domestic violence by a preponderance of the evidence.

Title 10, Section 1041 of the Delaware Code provides a list of eight types of conduct which constitute abuse.[35] Section 1041 further provides that "domestic violence" means abuse perpetuated by one member against another member of the following protected classes:

 a. *Family,* as that term is defined in § 901(12) of this title, regardless, however, of state of residence of the parties; or

 c. Intentionally or recklessly damaging, destroying, or taking the tangible property of another person;
 d. Engaging in a course of alarming or distressing conduct in a manner which is likely to cause fear or emotional distress or to provoke a violent or disorderly response;
 e. Trespassing on or in property of another person, or on or in property from which the trespasser has been excluded by court order;
 f. Child abuse, as defined in Chapter 9 of Title 16;
 g. Unlawful imprisonment, kidnapping, interference with custody and coercion, as defined in title 11; or
 h. Any other conduct which a reasonable person under the circumstances would find threatening or harmful.

b. *Former spouses;* persons cohabitating together who are holding themselves out as a couple, with or without a child in common; persons living separate and apart with a child in common; or persons in a current or former substantive dating relationship.[36]

The Court may grant "appropriate relief" upon a finding by a preponderance of the evidence that the alleged domestic violence has occurred.[37] The preponderance of the evidence standard of proof is defined as "such relevant evidence as will enable the court to determine the identity of the litigant who should prevail, the weight of the evidence tipping in favor of that litigant."[38]

In the present case, the Commissioner found by a preponderance of the evidence that Husband committed an act or acts of abuse against Wife pursuant to Section 1041(1)(d.) and (h.) by "engaging in a course of alarming or distressing conduct in a manner which is likely to cause fear or emotional distress"[39] and by engaging in "any other conduct with a reasonable person under the circumstances would find threatening or harmful."[40] To support her decision, the Commissioner noted that the testimony established that Husband had screamed on the phone to the parties' son, and yells and screams in person when he is angry. Additionally, Husband had sent Wife text messages repeatedly to the point where Wife sought police intervention to get the text messages to stop. Because the Commissioner found that Husband committed an act or acts of abuse against a former spouse as well as his children, pursuant to Section 1041(2), the January 18, 2013 PFA Order issued by the Commissioner articulated a finding of domestic violence.

After reviewing the transcript from the hearing, the Court finds by a preponderance of the evidence that Husband committed an act or acts of domestic violence. As stated above, the Court gives deference to the Commissioner's findings of credibility of the parties and witnesses. In the present case, the Commissioner found the testimony of Wife and Wife's mother regarding Wife's allegations of abuse to be credible. Husband argues in his Request for Review that Wife lied under oath; however, Husband does not point to any specific instance in the hearing where he believes Wife was untruthful.[41] The Court finds that it was reasonable for the Commissioner, who observed Wife testifying at the trial, to conclude that Wife was credible, and give her testimony regarding the alleged abuse by Husband substantial weight.

36. DEL.CODE ANN. tit. 10, § 1041(2) (2013) (emphasis added).

37. *See* DEL.CODE ANN. tit. 10, § 1043(e) (2013).

38. *Shipman v. Div. of Soc. Servs.,* 454 A.2d 767, 768 (Del.Fam.Ct.1982) (citing *Reynolds v. Reynolds,* 237 A.2d 708, 711 (Del.1967)).

39. DEL.CODE ANN. tit. 10, § 1041(1)(d.) (2013).

40. DEL.CODE ANN. tit. 10, § 1041(1)(h.) (2013).

41. A review of the hearing transcript shows that husband implied that he believed Wife was lying when Husband questioned Wife regarding certain photographs that Wife sent to Husband (See PFA Hr'g Tr. 20: 14–17, Jan. 18, 2013); however, this testimony did not relate to any of the allegations of abuse Wife made against Husband. Although a witness's untruthfulness on the witness stand may cause the Court to question the witness's credibility, in this case, there has been no substantive proof offered by Husband to show that Wife did, in fact, lie while on the witness stand. Husband merely recites a non-specific allegation that Wife "lied under oath" in his Request for Review, without presenting any evidence to support the allegation and without even pinpointing which testimony of Wife's he believes was untrue.

Wife testified to Husband sending Wife text messages repeatedly despite Wife's requests for him to stop, to the point where Wife sought police involvement to get the text messages to stop. Additionally, Wife testified to an instance where Husband was screaming on the telephone to the parties' nine-year old son. Husband has a history of yelling and screaming at Wife, and of calling Wife names through e-mails, text messages, and telephone conversations. Accordingly, the Court finds that this conduct on the part of Husband constitutes "abuse" under Section 1041(1)(d.) and (h.). The course of conduct in which husband engaged, namely sending numerous and repeated text messages to Wife, yelling at Wife and the children, and calling Wife names, is conduct which is alarming or distressing and is likely to cause fear or emotional distress pursuant to Section 1041(d.). Additionally, Husband's reaction that he wanted no future contact with Wife or children after his suspension based on Wife's filing a harassment report against Husband, coupled with Husband's history of screaming and anger against Wife, is conduct which a reasonable person under the circumstances would find threatening or harmful pursuant to Section 1041(1)(h.). Husband's abuse towards his former spouse and children constitutes domestic violence under Section 1021(2).

Husband further objects to the fact that the "Commissioner disregarded witness'

statements that defended [Husband] from allegations of abuse."[42] The Court rejects this argument. Again, Husband does not specify to which witness or statements he is referring. However, because the Commissioner stated on the record that she was not considering the testimony of E.W. when making her decision[43], the Court assumes this is the testimony to which Husband is referring. First, the Court notes that Husband did not call E.W. as a witness. Wife, who did not subpoena E.W., called E.W. as a witness since E.W. was voluntarily in the Courthouse during the hearing. In fact, at the hearing, Husband questioned whether or not E.W. actually had to testify.[44] Further, the Commissioner, who was able to see and hear the witnesses at the hearing, was entitled to judge the credibility of each witness and determine how much weight to give to each witness's testimony. Although the Commissioner did not specifically state on the record why she was not considering E.W.'s testimony, it was within the Commissioner's discretion to decide how much weight to give the testimony of each witness depending on what the Commissioner found the credibility of each witness to be. As stated above, the Court will give deference to the Commissioner's determination of the credibility of the parties and witnesses.[45]

Husband also argues that Wife did not present any evidence that substantiated her allegations of abuse on the part of

42. *See* Resp't Request for Review of Commissioner's Order, January 28, 2013.

43. See PFA Hr'g Tr. 70: 16–17, Jan. 18, 2013.

44. *See* PFA Hr'g Tr. 42: 13–24, Jan. 18, 2013.

45. The Court has had the opportunity to review the transcript from the January 18, 2013 hearing, and notes that even if the Court were to consider the testimony of E.W., the Court would still find that Husband committed domestic violence by a preponderance of the

evidence. Although E.W. attempted to downplay Husband's anger issues, her testimony still alluded to some conduct and behavior on the part of Husband which would constitute abuse. Accordingly, even if the Court were to balance E.W.'s testimony against the testimony of Wife and Wife's mother, the Court would still find by a preponderance of the evidence that Husband's behavior towards Wife and the children constituted abuse.

Husband, and that Wife did not present any police reports documenting any allegations of domestic violence. As discussed above, Wife provided evidence in the form of her own testimony and the testimony of her mother which showed conduct on the part of Husband that constitutes abuse under Title 10, Section 1041(1). Further, there is no requirement in Section 1042, which discusses the commencement of a PFA action, or Section 1043, which discusses PFA hearings after the entry of an *ex parte* PFA order, that a petitioner in a PFA action provide any police reports in order for the Court to make a finding of abuse. In fact, the definition of "abuse" as provided in Section 1041(1) includes conduct which is "likely to cause fear or emotional distress"[46] or "which a reasonable person under the circumstances would find threatening or harmful[47]." Such conduct need not rise to the level of conduct which would require police involvement. Accordingly, there may not always be police reports for a petitioner to provide to the Court to substantiate the petitioner's allegations of abuse. It is perfectly appropriate for the Court to rely on testimony of the parties and witnesses when determining whether or not an act or acts of abuse occurred, and that is what the Commissioner did in this case.

## II. There were no problems regarding Husband's *pro se* representation or Wife's representation by counsel

■ Husband further argues that he was not afforded a continuance of the PFA hearing in order to obtain legal representation, that the Commissioner never acknowledged Husband's lack of legal representation, and that Wife's attorney entered her appearance the morning of the PFA hearing. The Court finds that these arguments are without merit.

Family Court Rule of Civil Procedure 40 discusses motions for continuances in civil proceedings. In particular, the Rule provides that "all motions for continuances must be made in a timely manner and in writing to the judge or master assigned to hear the case,"[48] however, the judge or master may consider an oral or incomplete request for a continuance "when an emergency or unforeseeable situation prevents full compliance with Rule 40(a)"[49]. In the present case, however, Husband never made a written or oral motion to the Court for a continuance of the PFA hearing. The Temporary *Ex Parte* PFA Order issued on January 11, 2013 noted that a hearing on the PFA had been scheduled for January 18, 2013. Between January 11, 2013 and January 18, 2013, Husband made no written motion to the Court requesting a continuance of the PFA hearing scheduled for January 18, 2013. A review of the transcript from the January 18, 2013 hearing further indicates that Husband never even made an oral request for a continuance on the record at the onset of the hearing. If Husband wished for a continuance of the hearing in order to obtain legal representation, he should have filed a motion with the Court requesting a continuance, which the Court would have considered and either granted or denied. Husband cannot now, after being unsatisfied with the outcome of the hearing, argue that a continuance of the hearing should have been granted when Husband never requested such a continuance prior to or at the hearing.

■ Husband next argues that the Commissioner did not acknowledge Hus-

---

**46.** Del.Code Ann. tit. 10, § 1041(1)(d.) (2013).

**47.** Del.Code Ann. tit. 10, § 1041(1)(h.) (2013).

**48.** Del. Fam. Ct. R. Civ. P. 40(a).

**49.** Del.Fam. Ct. R. Civ. P. 40(d).

band's lack of legal representation. The Court is unsure exactly what Husband means by this argument. Litigants often represent themselves in Family Court proceedings. Husband had an opportunity to hire his own attorney, but chose not to. Further, a civil PFA proceeding, in contrast to some other proceedings before the Family Court[50], is not a proceeding where a litigant has a right to court-appointed counsel. At the January 18, 2013 hearing, Husband had the opportunity call witnesses (although he elected not to), cross-examine Wife's witnesses, and give a closing argument.

The Family Court regularly grants flexibility to *pro se* litigants.[51] Additionally, to ensure that *pro se* litigants are treated fairly, our Supreme Court has adopted Judicial Guidelines for Civil Hearings Involving Self–Represented Litigants in order to provide guidance to Judges to address concerns of "balancing self-represented litigants' perceptions of procedural fairness while maintaining neutrality in the courtroom, particular where one party is self-represented and one has an attorney."[52] These guidelines provide suggested principles for Judges to use when conducting hearings with self-represented litigants, and state that

Judges should "maintain courtroom decorum cognizant of the effect it will have on everyone in the courtroom, including self-represented litigants,"[53] and "be cognizant that self-represented parties are generally under stress of unfamiliar environment and should attempt to ease the anxiety in the courtroom so participants are more likely to fully participate in the proceedings."[54]

The Commissioner provided Husband with some leniency during his cross-examination several times throughout the course of the hearing.[55] On these instances, while conducting cross-examination of Wife, Husband testified within the context of his cross-examination questions. The Commissioner instructed Husband to rephrase his questions so as to refrain from giving testimony in the context of his questioning, but allowed Husband to continue with his line of questioning, even after he improperly testified during his cross-examination of Wife. Accordingly, there was no issue with Husband's *pro se* representation at the hearing which would cause this Court to disturb the Commissioner's Order.

■ Husband's final argument is that Wife's attorney entered her appearance

---

**50.** DEL.FAM. CT R. CIV. P. 207 allows for the appointment of counsel for indigent parents in dependency proceedings before this Court; DEL.FAM. CT. R.CRIM. P. 44(a) discusses the right to counsel of a person before this Court in a criminal proceeding, and calls for the Court to appoint counsel in such cases where the person charged appears without counsel, unless the person charged elects to proceed without counsel; In *Black v. Div. of Child Support Enforcement*, 686 A.2d 164 (Del. 1996), our Supreme Court held that a parent has the right to court-appointed counsel in a civil contempt proceeding for failure to pay court-ordered child support when a possibility of incarceration exists; Our Supreme Court also held in *Walker v. Walker*, 892 A.2d 1053 (Del.2006) that parents have a right to court-

appointed counsel in private guardianship cases.

**51.** *See M.W. v. L.W.*, No. CN07–01213, 2012 WL 5288773, at *2 (Del.Fam.Ct. Oct. 24, 2012).

**52.** Del. Judicial Guidelines for Civil Hearings Involving Self–Represented Litigants, May 11, 2011.

**53.** Del. Judicial Guidelines for Civil Hearings Involving Self–Represented Litigants 4.1.

**54.** Del. Judicial Guidelines for Civil Hearings Involving Self–Represented Litigants 4.2.

**55.** *See* PFA Hr'g Tr. 23: 17–20; 27: 13–14, Jan. 18, 2013.

the morning of the PFA hearing. Family Court Rule of Civil Procedure 5 provides that "An attorney shall appear for the purpose of representing a party by filing a written notice of appearance using a Family Court generated form. The notice of appearance shall specify the matter(s) in which the attorney will represent the party."[56] Such representation is limited to the specific petition filed.[57] There is nothing in this Rule that imposes a limitation upon when counsel can enter appearance for a party regarding a specific petition. The only limit Rule 5 provides is that the scope of counsel's representation shall not go beyond the petition for which counsel entered her representation. In the present case, counsel for Wife properly entered her appearance for Wife on the Petition for PFA on January 18, 2013. According-ly, after entering her appearance, counsel for Wife became the attorney of record for Wife regarding the Petition for PFA, and it was proper for counsel to participate at the January 18, 2013 hearing to represent Wife regarding this Petition.

### Conclusion

For the foregoing reasons, the Court **ACCEPTS**, in whole, the Commissioner's Order dated January 18, 2013.

**IT IS SO ORDERED.**

---

**56.** Del.Fam. Ct. R. Civ. P. 5(b)(2)(A).

**57.** *See* Del Fam. Ct. R. Civ P. 5(b)(2)(B).