**NEW CASTLE COUNTY, Defendant Below, Appellant,**

v.

**Peter DISABATINO and Cindy G. Disabatino, his wife, and Daniel Dominelli and Maureen M. Dominelli, his wife, Plaintiffs Below, Appellees.**

No. 218, 2000.

Supreme Court of Delaware.

Submitted: May 15, 2001.
Decided: Aug. 21, 2001.

John E. Tracey, Esquire, New Castle County Law Department, of New Castle, Delaware, for appellant.

Raymond E. Tomasetti, Esquire, of Newport, Delaware, for appellee.

1. *DiSabatino v. New Castle County,* Del.Ch., No. 12714, Jacobs, V.C., 2000 WL 354394

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices (constituting the Court en Banc).

HOLLAND, Justice.

This appeal originated from a complaint filed by the plaintiffs-appellees, Peter J. DiSabatino and Cindy G. DiSabatino, and Daniel J. Dominelli and Maureen M. Dominelli, against the defendant-appellant, New Castle County ("the County"). The Complaint sought to have the Court of Chancery issue an order compelling the County to act on appellees' application for building permits for Lots No. 63–A and No. 63–B Penn Manor and monetary damages for their losses as a result of the County's denial of these building permits.

New Castle County subsequently filed a complaint against Michael J. DiSabatino for Injunctive Relief and a Declaratory Judgment seeking an order requiring him to record a Record Minor Subdivision Plan combining Lot No. 63–A and Lot No. 63–B, restoring the status quo and having the Court of Chancery declare that the subdivision plan dividing Lot No. 63 is invalid. Michael J. DiSabatino subsequently died and the Estate of Michael J. DiSabatino was substituted as the named defendant. The Court of Chancery then consolidated the two cases.

A trial was held on April 28, 1999. Prior to the trial, the Court of Chancery granted the Estate of Michael J. DiSabatino's Motion to Dismiss them from the case as a party defendant. On March 29, 2000, after the parties completed post-trial briefing, the Court of Chancery issued an opinion.[1] It held that New Castle County was barred, by the doctrine of equitable estop-

(March 29, 2000) (Mem.Op.).

pel, from prohibiting the plaintiffs from receiving building permits for their lots.

In this appeal, New Castle County argues that the Court of Chancery erred in holding that it was equitably estopped from enforcing the provisions of its subdivision code. The County submits that the appellees' failed to demonstrate that they had substantially relied, in good faith, on an affirmative act of New Castle County, such that a balancing of the equities must be decided in the plaintiffs' favor. We have concluded that the judgments entered by the Court of Chancery must be affirmed.

### Facts [2]

The DiSabatinos are husband and wife, as are the Dominellis. New Castle County is a political body of State of Delaware. It is established pursuant to 9 *Del. C.* § 1101.

The parties' dispute arises from the October 14, 1977 subdivision of Penn Manor, a development located adjacent to Doe Run Road in Newark, New Castle County, Delaware. During the subdivision process, Note 10 was placed on the subdivision plan. This Note prohibited future subdivision for Lot No. 63 in Penn Manor. No explanation was given at the trial why or under what circumstances the Note 10 restriction was created.

On June 4, 1981, a resubdivision plan for Lots 62 and 64 was approved, at which point Note 10 was renumbered as "Note 8." At that time, Lots 62, 63 and 64 were under the control of Dina Holdings, an entity of which Michael DiSabatino was an officer. Mr. DiSabatino signed the 1981 record of resubdivision plan which contained Note 8 prohibiting any subdivision of Lot No. 63.

On March 17, 1982, Dina Holdings conveyed Lot No. 63 to Michael DiSabatino. During the next nine years, Lot No. 63 remained unsubdivied. In 1991, Michael DiSabatino hired Gejza Csoltko, a professional engineer, to prepare a resubdivision plan for Lot No. 63.[3] Mr. Csoltko submitted a resubdivision plan for Lot No. 63 but did not bring Note 8 to the attention of County planners, nor did his proposed subdivision plan disclose to the County planners that the plan's intent was to remove the restriction. The plan stated only that its purpose was to subdivide Lot No. 63.

The resubdivision plan was assigned to Mr. Charles McCombs, a County Planning Department employee, for review. During his ten to fifteen minute review of the record plan for Penn Manor, Mr. McCombs did not uncover Note 8, nor at any time during the review process did Mr. Csoltko or Michael DiSabatino bring the existence of Note 8 to the attention of the County planners. On October 17, 1991 the Court approved the resubdivision plan for Lot No. 63, and thereby removed the Note 8 restriction.

After Lot No. 63 was subdivided, the two newly created lots, Lots 63A and 63B were sold to Daniel Dominelli and Peter DiSabatino. Dominelli purchased Lot No. 63A for $42,000; and Peter DiSabatino, Michael DiSabatino's nephew, purchased Lot No. 63B for $5,000. The new lots are approximately the same size. Lot No. 63B is situated at the top of a hill that overlooks Lot No. 63A. The drainage easement that bisected the original Lot No. 63 impacts Lots 63A more than it does Lot No. 63B, and although the entirety of Lot No. 63 is burdened with protected wetlands,

---

**2.** The facts are taken from the Court of Chancery's opinion.

**3.** Mr. Csoltko had prepared the original subdivision plan for Penn Manor, had practiced in Delaware for twenty years, and was familiar with the subdivision process.

those wetlands affect Lot No. 63A more than they do Lot No. 63B.

Shortly after the subdivision plan was approved by the County, and while the plaintiffs were making plans to build homes on their respective lots, Michael Mitchell, Esquire, an Assistant County Attorney, learned of the restrictive note. As a result, Mr. Mitchell returned the subdivision plan to Ramesh Batta, the site engineer who had been retained by plaintiffs. Mr. Mitchell advised Mr. Batta that the subdivision plan would not be processed and that no building permits would be issued for Lots No. 63A and 63B, because the original subdivision of Lot No. 63 was prohibited by Note 8. This action followed.

### Equitable Estoppel Contentions

The plaintiffs seek to compel New Castle County to issue building permits for two parcels of land that they own, plus attorney fees and costs. At issue is whether the County may validly rescind its earlier decision resubdividing the lots that the plaintiffs purchased. That rescinded authorization was the basis for the County's refusal to grant to appellees permits to build their residences, after they had purchased their lots. The appellees contend that when they purchased their respective lots from Michael DiSabatino, they substantially relied to their detriment on the County's October 17, 1991 approval of the original subdivision. They also argue that once they purchased the resubdivided lots, the County could not rescind the subdivision approval by virtue of the doctrine of equitable estoppel.

The County argues that the appellees should not succeed on their equitable estoppel claim for two reasons. First, the County submits that a critical element of that claim—that there be an act or omission by the government—cannot be estab-

lished where the government act is based on fraud or mistake. The County argues that Michael DiSabatino fraudulently induced the County to approve the resubdivision of Lot No. 63, or, alternatively, that the County approved the subdivision by mistake. Second, the County argues that the plaintiffs have not established that they substantially changed their position in reliance upon the resubdivision approval.

The County also contends that the appellees are not "bona fide purchasers" for two reasons. First, the DiSabatinos did not purchase Lot No. 63B "for value" because they paid only $5,000 for a lot that should have been worth more than Lot No. 63A, which sold for $42,000. Second, the County submits that the plaintiffs had at least constructive knowledge that the restrictive note had originally been placed on Lot No. 63. Accordingly, the County contends that the plaintiffs would have discovered that fact if they had conducted a reasonable investigation.

### Standard of Review

The trial judge made findings of fact on the questions of fraud, misrepresentation, detrimental reliance, and the bona fide purchaser status of the plaintiffs. Those factual findings were based upon consideration of the documentary evidence and the testimony and credibility of "live" witnesses at trial. When the determination of facts turns on a question of credibility and the acceptance or rejection of "live" testimony by the trial judge, those factual findings must be given great deference by an appellate court.[4] This Court must accept the factual findings made by the trial judge if those findings are supported by the record and are the product of an orderly and logical deductive process.[5] In the exercise of judicial restraint, the applicable standard of appellate review

4. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972).

5. *Id.*

requires this Court to defer to such factual findings, even though independently we might have reached different conclusions.[6]

### Conclusion

■ The Court of Chancery concluded that the plaintiffs' claims were meritorious. The Court of Chancery held that New Castle County is equitably estopped from rescinding its original subdivision approval.[7] Accordingly, the Court of Chancery entered a final judgment in favor of the plaintiffs.

We have considered the issues raised in this appeal after oral argument and on the briefs filed by the parties. We have determined that: to the extent the issues raised on appeal are factual, the record evidence supports the trial judge's factual findings; to the extent the errors alleged on appeal are attributed to an abuse of discretion, the record does not support those assertions; and to the extent that the issues raised on appeal are legal, they are controlled by settled Delaware law, which was properly applied.

Therefore, this Court has concluded that the judgments of the Court of Chancery should be affirmed on the basis of and for the reasons assigned by the Court of Chancery in its well-reasoned decision dated March 28, 2000.[8]

6. *Id.*

7. *See Acierno v. New Castle County,* D.Del., C.A. No. 92–385, 2000 WL 718346 (May 23, 2000); *Dragon Run Farms, Inc. v. Board of Adjustment of New Castle County,* Del.Super.,

1988 WL 90551, Stiftel, J. (Aug. 11, 1988); *Allen v. Folsom,* Del.Ch., 372 A.2d 200 (1976).

8. *DiSabatino v. New Castle County,* Del.Ch., No. 12714, Jacobs, V.C., 2000 WL 354394 (March 29, 2000) (Mem.Op.).