IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EAGLE FORCE HOLDINGS, LLC, | § | |
| and EF INVESTMENTS, LLC, | § | |
| | § | No. 405, 2019 |
| Plaintiffs-Below, | § | |
| Appellants/Cross-Appellees, | § | Court Below: |
| | § | Court of Chancery |
| v. | § | of the State of Delaware |
| | § | |
| STANLEY V. CAMPBELL, | § | C.A. No. 10803 |
| | § | |
| Defendant-Below, | § | |
| Appellee/Cross-Appellant. | § | |

Submitted: May 6, 2020
Decided: July 8, 2020

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, Justices; and **JOHNSTON**, Judge[*] constituting the Court *en Banc.*

Upon appeal from the Court of Chancery. **AFFIRMED**, in part; **REVERSED**, in part.

Frank E. Noyes, II, Esquire, Offit Kurman, P.A., Wilmington, Delaware. Harold M. Walter, Esquire, Baltimore, Maryland, for Appellants/Cross-Appellees.

David L. Finger, Esquire, Finger and Slanina, LLC, Wilmington, Delaware for Appellee/Cross-Appellant.

**VALIHURA**, Justice:

---

[*] Sitting by designation under Del. Const. Art. IV § 12.

In a decision dated May 24, 2018, (the "Opinion"),[1] this Court reversed and remanded a decision of the Court of Chancery (the "Trial Opinion").[2] This is an appeal of the Court of Chancery's August 29, 2019 decision following remand (the "Remand Opinion").[3]

## I.    Background

This lawsuit was filed on March 17, 2015 by Plaintiffs Eagle Force Holdings, LLC and EF Investments, LLC (collectively, the "Plaintiffs") against Stanley Campbell. In 2013, Richard Kay and Campbell decided to form a business venture to market medical diagnosis and prescription technology that Campbell had developed. The parties outlined the principal terms of the investment through two letter agreements in November 2013 and April 2014. Under the principal terms, Kay and Campbell would form a new limited liability company and each would be a fifty-percent member. Kay would contribute cash. Campbell would contribute stock of Eagle Force Associates, Inc. ("Eagle Force Associates"), a Virginia corporation, and the membership interest of Eagle Force Health, LLC ("Eagle Force Health," and together with Eagle Force Associates, "Eagle Force"), a Virginia limited liability company, along with intellectual property.

---

[1] *Eagle Force Hldgs., LLC v. Campbell*, 187 A.3d 1209 (Del. 2018) [hereinafter *Opinion*]. The facts are recounted in detail in the Opinion, and we do not repeat them here, except as necessary to address the issues raised in this appeal.

[2] *Eagle Force Hldgs., LLC v. Campbell*, 2017 WL 3833210 (Del. Ch. Sept. 1, 2017) [hereinafter *Trial Opinion*].

[3] *Eagle Force Hldgs., LLC v. Campbell*, 2019 WL 4072124 (Del. Ch. Aug. 29, 2019) [hereinafter *Remand Opinion*].

2

For many months after April 2014, the parties negotiated several key terms of the transaction documents. Kay contributed cash to Eagle Force Associates. Campbell executed a promissory note for these contributions with the agreement that Kay would cancel the note when they closed the deal on the new venture. After months of negotiations, on August 28, 2014, Kay and Campbell signed versions of two transaction agreements: a Contribution and Assignment Agreement (the "Contribution Agreement") and an Amended and Restated Limited Liability Company Agreement, (the "LLC Agreement," and with the Contribution Agreement, the "Transaction Documents").

A serious question arose as to whether the parties intended to be bound by these signed documents. Plaintiffs asserted that the parties formed binding contracts at the August 28 meeting. Campbell contended that he signed merely to acknowledge receipt of the latest drafts of the agreements but not to manifest his intent to be bound by the agreements. Whether there was a valid, binding contract affected the other main issue this Court addressed on the prior appeal, namely, whether this Court and the Court of Chancery could exercise personal jurisdiction over Campbell. After numerous evidentiary hearings, a five-day trial, and several motions for contempt filed against Campbell—proceedings spanning more than two years—the Court of Chancery determined that neither transaction document was enforceable. Accordingly, it dismissed the case for lack of personal jurisdiction, even after finding Campbell in contempt of the status quo order.

In reversing the Court of Chancery, this Court held that the trial court did not properly apply the test set forth in *Osborn ex rel. Osborn v. Kemp*.[4] In setting forth the elements of a valid, enforceable contract, we explained that a valid contract exists when "(1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."[5]

Though it mentioned the *Osborn* test, the trial court relied primarily on *Leeds v. First Allied Connecticut Corp.*,[6] a Court of Chancery decision that addresses the enforceability of letters of intent and provides that the "determination of whether a binding contract was entered into will depend on the materiality of the outstanding issues in the draft agreement and the circumstances of the negotiations."[7] Applying *Leeds*, the trial court found that the agreement was not sufficiently definite due to a lack of agreement on certain material terms, primarily the consideration to be exchanged. We acknowledged that this could have been viewed as an implicit finding that the parties never intended to be bound. But we believed there was force in Plaintiffs' contention that the parties' intent to be bound required a separate factual finding. There was evidence within the four corners of the documents and other powerful, contemporaneous evidence, including the actual

---

[4] 991 A.2d 1153 (Del. 2010).

[5] *Opinion,* 187 A.3d at 1212–13 (quoting *Osborn*, 991 A.2d at 1158). The dissenting Justices agreed that, "the Court of Chancery's analysis tended to blend two issues relevant to formation: whether the parties intended to be bound by the contract and whether the contract contained sufficiently definite terms." *Id.* at 1242.

[6] 521 A.2d 1095 (Del. Ch. 1986).

[7] *Trial Opinion*, 2017 WL 3833210, at *14 (quoting *Greetham v. Sogima L–A Manager, LLC*, 2008 WL 4767722, at *15 (Del. Ch. Nov. 3, 2008) (citing *Leeds*, 521 A.2d at 1101–02)).

4

execution of the agreements, that suggested the parties intended to be bound. However, we acknowledged that there was evidence that cut the other way. Given that this was a question of fact, we remanded the case to the Court of Chancery to make a finding on the parties' intent to be bound.

As to *Osborn's* second inquiry, *i.e.*, whether the contract's terms were sufficiently definite, we said that was largely a question of law. We held that the agreements sufficiently addressed all issues identified by the trial court as material to the parties—including the consideration to be exchanged. As to the last requirement for a valid contract, the existence of legal consideration, the parties did not dispute that legal consideration existed. We directed that, "[o]n remand, as with the Contribution Agreement, the Court of Chancery should revisit the evidence and make an express finding on the parties' intent to be bound by the LLC Agreement."[8] We stated further that, "[g]iven that the parties do not contend before this Court that any terms of the LLC Agreement are not sufficiently definite or that the LLC Agreement is not supported by legal consideration, we conclude that these two prongs are satisfied."[9]

Finally, we addressed the trial court's determination that, because it lacked personal jurisdiction over Campbell, its prior contempt orders were unenforceable and that it, therefore, could not decide the pending contempt motion. More specifically, after presiding over two hearings on the contempt motions, the trial court determined that,

---

[8] *Opinion,* 187 A.3d at 1239.

[9] *Id.* at 1240.

5

because it had found that it lacked personal jurisdiction over Campbell, it could not hold Campbell in contempt and impose sanctions for his violations of a status quo order.[10] We observed that this Court had not squarely addressed whether the Court of Chancery could impose sanctions on a defendant for violating a status quo order if the court ultimately found that it lacked personal jurisdiction over the defendant. In resolving this unsettled question, we unanimously held that, "when a Delaware court issues a status quo order pending its adjudication of questions concerning its own jurisdiction, it may punish violations of those orders with contempt and for sanctions, no matter whether it ultimately finds that it lacked jurisdiction."[11] Otherwise, we reasoned, "[t]hose orders would be meaningless absent the power to enforce them."[12]

---

[10] On July 23, 2015, the Court of Chancery granted Plaintiffs' requested status quo order, providing them access to information concerning Eagle Force. *Eagleforce Hldgs., LLC v. Campbell*, 2015 WL 4501504 (Del. Ch. July 23, 2015) (Order) [hereinafter *2015 Order*]. The status quo order required Campbell to give Plaintiffs ten business days' advance notice of any transaction subject to the status quo order, and it mandated that any transaction that Plaintiffs objected to in writing could not proceed without court approval. On May 27, 2016, while proceedings were pending before the trial court, Plaintiffs moved for sanctions and to hold Campbell in contempt for violating the status quo order (the "First Contempt Motion"). Campbell appeared and testified in an August 31, 2016 evidentiary hearing, but he failed to appear the next day as directed by the trial court. The court found him in contempt for failing to provide the required notice before withdrawing approximately $100,000 in accrued unreimbursed expenses from Eagle Force Associates and paying $38,000 in vendor fees. On March 6, 2017, Plaintiffs filed a supplemental motion for contempt against Campbell for an additional alleged violation of the Order (the "Second Contempt Motion"). On May 5, 2017, the court held an evidentiary hearing on the Second Contempt Motion. Plaintiffs filed yet another such motion on May 24, 2017, captioned Second Supplemental Motion to Hold Defendant in Contempt for Violations of the Order (the "Third Contempt Motion"). The court held an evidentiary hearing on August 28, 2017 on this motion. Campbell testified at the evidentiary hearings on both supplemental motions. The trial court delayed its rulings until its decision on personal jurisdiction.

[11] *Opinion,* 187 A.3d at 1241–42.

[12] *Id.* at 1241 (citations omitted). As noted above, on this point, this Court was unanimous. *See id.* at 1242 (Strine, C.J., concurring in part, dissenting in part, joined by Vaughn, J.) (stating that, "[h]aving exercised the privilege to litigate before our Court of Chancery, [Campbell] was bound

6

On August 29, 2019, following additional briefing and argument, the Court of Chancery issued its opinion on remand.[13]  The court held that Campbell's conduct and communications with Kay, before and during the signing of the Transaction Documents, did not constitute an overt manifestation of assent to be bound by the documents. Accordingly, it held that "the contribution agreement and the operating agreement are not enforceable."[14]  Because it concluded that Campbell was not bound by the agreements' forum selection clauses, and because Plaintiffs failed to identify any other applicable basis for personal jurisdiction, the court dismissed the remainder of the claims for lack of personal jurisdiction.

Plaintiffs now raise three issues in their appeal of the Remand Opinion.  First, Plaintiffs assert, in a nutshell, that by relying on and drawing inferences from the parties' subjective state of mind, the trial court:  (i) considered the wrong evidence (Campbell's state of mind); (ii) applied the wrong test for determining intent to be bound (*e.g.*, a subjective test based upon Campbell's unexpressed state of mind); and (iii) reached an irrelevant conclusion (*e.g.*, in his mind, Campbell did not intend to be bound).  Second, Plaintiffs assert that the Court of Chancery erred in failing to undertake a separate analysis of the parties' intent to be bound to the LLC Agreement and "ignored and failed to take into account the additional factors appurtenant to the LLC Agreement identified in this

---

to honor its orders relating to his behavior, and he cannot escape responsibility for his non-compliance by claiming that he was only before the court to contest the question of personal jurisdiction").

[13] *Remand Opinion*, 2019 WL 4072124.

[14] *Id.* at *1.

7

Court's [Opinion]."[15]  Finally, Plaintiffs contend that the Court of Chancery erred in finding that Campbell did not consent to personal jurisdiction based upon Campbell's actual consent contained in the executed LLC Agreement.  They further assert that the court erred in finding that Campbell did not impliedly consent to personal jurisdiction pursuant to 6 *Del. C.* §18-109(a).  They base this assertion on Campbell's "knowingly accepting 50% - member status and appointment as a manager, director, and officer of Eagle Force Holdings, LLC, pursuant to the April 2014 Letter Agreement."[16]

Campbell counters that Plaintiffs do not claim that the factual findings lack evidentiary support in the record.  Rather, according to Campbell, Plaintiffs complain that the court weighed more heavily evidence favorable to Campbell, and that this does not constitute reversible error.  As to the assertion that the trial court erred in not making separate findings as to the LLC Agreement, Campbell cites the trial court's finding that "the facts surrounding the negotiation and signing of the LLC Agreement are largely identical to those of the Contribution Agreement" and that its conclusions drawn from those facts apply equally to both.[17]  Finally, Campbell asserts that he did not impliedly consent to jurisdiction.

In addition, Campbell raises three arguments on cross-appeal.  First, he asserts that in the absence of personal jurisdiction, he was not subject to contempt citations arising from the status quo order, and that to hold otherwise violated the Due Process requirement

---

[15] Opening Br. at 4.

[16] *Id.*

[17] *Remand Opinion*, 2019 WL 4072124, at *21.

8

of the Fourteenth Amendment to the United States Constitution. Second, he contends that the Court of Chancery erred by finding him in contempt without Plaintiffs first submitting a sworn affidavit as required by Court of Chancery Rule 70(b). Third, Campbell contends that the Court of Chancery erred by holding him in contempt for action taken between that court's initial dismissal based upon lack of personal jurisdiction, and this Court's reversal, when there was no stay of proceedings under Court of Chancery Rule 62.

For the reasons stated below, we reject all claims of error, except for the third issue on cross-appeal, and thus, we AFFIRM the decision of the Court of Chancery in part, and REVERSE in part.

## II. Analysis

### A. The Intent to Be Bound

First, we address Plaintiffs' contention, broadly framed, that the Court of Chancery "erred in finding that intent to be bound to the Transaction Documents was not manifested by Campbell's objective overt acts."[18] Plaintiffs assert a myriad of subsidiary challenges, all of which we have considered and find to be meritless. Some challenges assert that the court improperly focused on subjective evidence and ignored other objective evidence. Many challenges criticize the trial court's weighing of the evidence, and still others assert that its credibility determinations were flawed.[19] We will not address, in detail, each challenge, but rather, will deal with them broadly. We have reviewed each of the

---

[18] Opening Br. at 3.

[19] *See, e.g.,* Opening Br. at 41–44.

9

challenges carefully, and we now have had two occasions to review this record. Based upon our review of the record, we find none of Plaintiffs' claims of error to be meritorious.

The parties begin their discussion of these issues by suggesting that the trial court ignored the guidance in our Opinion, and they disagree on the level of deference to be given to the trial court's factual findings. In our Opinion, we stated that, "[u]nder Delaware law, overt manifestation of assent—not subjective intent—controls the formation of a contract."[20] "As such, in applying this objective test for determining whether the parties intended to be bound, the court reviews the evidence that the parties communicated to each other up until the time that the contract was signed—*i.e.*, their words and actions—including the putative contract itself."[21] Whether a party manifested an intent to be bound

---

[20] *Opinion,* 187 A.3d at 1229 (quoting *Black Horse Capital, LP v. Xstelos Hldgs., Inc.*, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014) (quoting *Indus. Am. Inc. v. Fulton Indus., Inc.*, 285 A.2d 412, 415 (Del. 1971))) (internal quotation marks omitted).

[21] *Id.* at 1229–30 (citing *Black Horse*, 2014 WL 5025926, at *12). In their Opening Brief, Plaintiffs weakly contend that the trial court erred in considering evidence that post-dated the signing of the Transaction Documents. They assert that, "no evidence was offered (or identified by the Chancery Court) as to when each alleged incident with an employee took place," and that, "in the absence of evidence that the various reported incidents took place before August 28, it was improper for the Chancery Court to rely on them to find Campbell subjectively intended not to be bound on August 28." Opening Br. at 17–18. They refer to several specific examples in their Reply Brief and contend that these events occurred after August 28. Reply Br. at 34–36. They acknowledge that some of the testimony was "vague and generalized" as to the timing of them. Plaintiffs assert that the trial court improperly relied upon these examples and inferred that they may have caused Campbell to have second thoughts about proceeding with the deal. We first note the trial court's recognition of our guidance in the Remand Opinion. *See Remand Opinion*, 2019 WL 4072124, at *3 (stating that, "[t]he evidence that may be considered is limited to the conduct of the parties during the period they negotiated the agreements and when they signed the agreements," and that, it considered "only that evidence that the parties communicated to each other up until the time the parties signed the documents"). Further, based upon our review of the record, we find no reversible error.

10

is a question of fact.[22]  The weight given to the evidence is for the trier of fact to determine.[23]  Further, claims of inconsistencies in the testimony of a witness go to the weight of that testimony, and the trier of fact is free to accept part of a witness's testimony while rejecting other parts.[24]

As this Court stated in *CDX Holdings, Inc. v. Fox*:

After a trial, findings of historical fact are subject to the deferential 'clearly erroneous' standard of review.  That deferential standard applies not only to historical facts that are based upon credibility determinations but also to findings of historical fact that are based on physical or documentary evidence or inferences from other facts.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.  When factual findings are based on determinations regarding the credibility of witnesses, the deference already required by the clearly erroneous standard of appellate review is enhanced.[25]

Plaintiffs assert that the trial court erred in focusing on Campbell's subjective thoughts about events and communications and what he thought about Kay as a person. The Court of Chancery concluded that, "this meeting and the events leading up to it do not suggest to me that Campbell intended to be bound by the Contribution Agreement."[26] Pointing to the court's reference to Campbell's intent, Plaintiffs argue that the court instead should have focused on whether a reasonable person in Kay's position would have

---

[22] *Opinion,* 187 A.3d at 1230.

[23] *Hudak v. Procek*, 806 A.2d 140, 150 (Del. 2002).

[24] *Jeffers v. State*, 934 A.2d 908, 911 (Del. 2007).

[25] 141 A.3d 1037, 1041 (Del. 2016).

[26] *Remand Opinion*, 2019 WL 4072124, at *20.

understood from Campbell's overt actions of August 28, that Campbell intended to be bound.[27]

As to the assertion that the Court of Chancery improperly relied on the parties' subjective intent and disregarded objective evidence, we are satisfied that the Court of Chancery adhered to this Court's guidance for adjudicating the remaining issue of intent on remand. It engaged in a careful and detailed analysis of the factual record, and it focused on objective events. At the outset of its Remand Opinion, the trial court stated its key holding, *i.e.*, "that Campbell's conduct and communications with Kay before and during the signing of the transaction documents do not constitute an overt manifestation of assent to be bound by the documents."[28]

Plaintiffs next contend that if the subjective evidence were stripped away, the overt acts leading up to the August 28 signing tip the scales in their favor.[29] We reject Plaintiffs' invitation to re-weigh the evidence. We are satisfied that the trial court appropriately weighed the evidence and committed no error in this regard. The record reflects that in the

---

[27] Opening Br. at 16.

[28] *Remand Opinion*, 2019 WL 4072124, at \*1; *see also id.* at \*18 ("The record evidence reveals that Campbell's conduct and communications do not constitute an overt manifestation of his assent to be bound by the Contribution Agreement.").

[29] For example, Plaintiffs contend that: Campbell's words and actions on August 28 conveyed his intent to be bound; the trial court disregarded the testimony of Katrina Powers (who was present at the August 28 signing); Campbell's testimony regarding a practice of meeting with Kay and Powers to acknowledge receipt of drafts by signing them was not credible; other objective evidence leading up to the August 28 signing was ignored by the court; and the court admitted that it could not explain Campbell's overt acts in a manner consistent with its finding that Campbell did not intend to be bound.

trial court's view, Plaintiffs did not sufficiently tip the scales in their favor, as the trial court found:

> At best, Plaintiffs' counter-narrative presents evidence equal to that presented by Campbell. This balance is insufficient to prevail. Plaintiffs must prove that a contract exists by a preponderance of the evidence. Even including their strongest evidence, the signatures on the Transaction Documents, the evidence is at best in equipoise. And the evidence certainly does not meet the clear and convincing standard necessary for the relief Plaintiffs seek, specific performance.[30]

Plaintiffs suggest that the trial court erred in not giving greater weight to the parties' signing of the Transaction Documents. Although the trial court recognized that, "[s]ignatures are often dispositive evidence of an intent to be bound,"[31] it concluded that "in this highly unusual case, the signatures alone are not sufficient."[32] On this point, we are sympathetic to Plaintiffs' argument that the act of placing signatures on the signature lines at the end of a contract "is so universally recognized as the means of accepting and binding one's self to the contract, that no other act or statement is ordinarily required for the signature to create legal consequences."[33] Indeed, Plaintiffs point out that on August 28, Campbell did not merely initial or put his first name on the front or last page of the document, as he testified he sometimes did.[34] Rather, he put his entire signature on the signature lines of the Contribution and LLC Agreements, and hand-wrote his title, "CEO"

---

[30] *Remand Opinion*, 2019 WL 4072124, at *20.

[31] *Id.* at *18.

[32] *Id.*

[33] Opening Br. at 21–22.

[34] App. to Opening Br. at A1056 (Campbell Dep. at 363–64); *see also id.* at A1521 (Trial Tr. at 916).

and/or hand-printed his name on them.  (*See* Exs. A, B).  After Kay and Campbell signed the agreements, Campbell walked around his desk and embraced Kay and Powers.[35]  This evidence strongly and objectively suggests more than mere acknowledgement of receipt of the documents.  But in remanding this case, we recognized that this case was unusual, and we specifically asked the trial court to make a finding on intent to be bound.  The trial court did just that, and found that the evidence revealed that Campbell had a practice of endorsing draft documents to acknowledge receipt, and that "Campbell also credibly testified that, consistent with this practice, Kay requested Campbell's signature to acknowledge receipt during the August 28 meeting."[36]  Even if a reviewing court were to come out differently, that is not a basis to overturn the decision of the trial court.[37]  Plaintiffs' dissatisfaction with the weight given to this evidence does not constitute reversible error.

Plaintiffs also contend that the trial court did not properly consider evidence and testimony from the third attendee at the August 28 meeting, Katrina Powers.  The Court of Chancery concluded that, as to Powers, "it appears that she was not present for or privy to all communications between Kay and Campbell."[38]  The court stated, "[f]urther, she does not recall the details of the conversations between Kay and Campbell during that

---

[35] *Trial Opinion*, 2017 WL 3833210, at *11.

[36] *Remand Opinion*, 2019 WL 4072124, at *18.

[37] *See New Castle Cnty. v. DiSabatino*, 781 A.2d 687, 690-91 (Del. 2001) ("This court must accept the factual findings made by the trial judge if those findings are supported by the record and are the product of an orderly and logical deductive process.  In the exercise of judicial restraint, the applicable standard of appellate review requires this Court to defer to such factual findings, even though independently we might have reached different conclusions.").

[38] *Remand Opinion*, 2019 WL 4072124, at *13.

14

meeting."[39]  Plaintiffs argue, however, that "Powers gave detailed testimony about what was said, and not said, at the August 28 meeting which Chancery did not take into account when it weighed the evidence this time around."[40]  Powers testified that she was present for the entire meeting,[41] but it appears that Powers was not privy to emails that were sent between Kay and Campbell.[42]  The Court of Chancery found that she was not aware of *all communications* between Kay and Campbell.  Although the record suggests that Powers was in fact present during the meeting at issue, just as Plaintiffs say, she did not have all the information about all that was transpiring, nor did she remember it all.[43]  We do not find a basis for upsetting the trial court's conclusions that the "credibility assessments of Kay and Campbell tip the scales in this case."[44]

Plaintiffs devote a section of their Opening Brief to arguing that the trial court's "credibility determination is flawed and should not be given deference because the court

---

[39] *Id.*

[40] Opening Br. at 26.

[41] Powers did testify that she was present during the entire meeting when the Transaction Documents were executed:

> Q.  During the second visit in particular, were you in the presence of Mr. Campbell the whole time that Mr. Kay was in the presence of Mr. Campbell?
>
> A.  Yes.

App. to Opening Br. at A1136 (Trial Tr. at 237/24–238/3).

[42] *Remand Opinion*, 2019 WL 4072124, at *11.

[43] Powers testified that she did not quite remember what was spoken about:  "I'm sure we spoke. I'm not sure what the conversation was.  But, you know, I had the documents.  That was obviously the reason why we were there, why we had waited around."  App. to Opening Br. at A1136 (Trial Tr. at 237/18–21).  *See also id.* at A1181 (Trial Tr. at 291–92).

[44] *Remand Opinion*, 2019 WL 4072124, at *11.

ignored relevant evidence directly contradicting Campbell's credibility."[45]  They further contend that the objective facts do not support Campbell's credibility concerning the events of the August 28 meeting when the Transaction Documents were signed.  Finally, they ask this Court to reverse, and to make our own credibility determinations, instead of remanding the matter to the Court of Chancery.[46]

We reject these contentions as well.  The trial court stated that it "had multiple opportunities to observe Campbell and assess his credibility; he testified before [the court] on three days of the five-day trial and at four evidentiary hearings," and that "[h]is testimony as it relates to his intent to be bound by the Transaction Documents is credible."[47]  The trial court further found that, "[a]fter listening to Campbell's testimony on multiple days, [it found] Campbell to be credible concerning the events of August 28 and place[d] more weight on Campbell's testimony when it conflict[ed] with Kay's and there [was] an absence of contemporaneous evidence."[48]  We decline Plaintiffs' request that we draw our own inferences and make our own fact findings.  As we said in *Levitt v. Bouvier*:

---

[45] Opening Br. at 41.  In this regard, Plaintiffs contend, for example, that:  the objective facts do not support Campbell's credibility concerning the events of August 28; there was an abundance of evidence (including the testimony of Katrina Powers) that undermined Campbell's credibility; the undisputed facts both before and after August 28 support the credibility of Kay and Powers; Campbell's testimony at trial was contradicted by his prior deposition testimony; and Campbell's credibility was undercut by having been found in contempt by the trial court on four occasions.

[46] They argue in their Opening Brief that, "[t]his Court should make its own determination of the intent to be bound issue and reverse, not remand."  Opening Br. at 55.

[47] *Remand Opinion*, 2019 WL 4072124, at *15.

[48] *Id.*  We reject Plaintiffs' various other contentions that certain evidence was disregarded or ignored.  We do not find that to be the case, or that any such challenges, singly or collectively, constitute reversible error.

It is only when the findings below are clearly wrong and the doing of justice requires their overturn that we are free to make contradictory findings of fact. When the determination of facts turns on a question of credibility and the acceptance or rejection of 'live' testimony by the trial judge, his findings will be approved upon review. If there is sufficient evidence to support the findings of the trial judge, this Court, in the exercise of judicial restraint, must affirm.[49]

Finally, Plaintiffs assert that despite this Court's prior holding that the Transaction Documents sufficiently addressed all issues identified by the trial court as material to the parties, the trial court "attempted to reinsert this factor in support of the intent to be bound factor . . . ."[50] We note at the outset that Plaintiffs did not make this precise argument in their Opening Brief on appeal, and thus, it is arguably waived.[51] But even so, we reject it. The separate concurring and dissenting opinion differed with the Majority on this point. The Remand Opinion cites the dissent several times,[52] and it observes that, "[t]he Contribution Agreement, with its omissions, does not reflect a document a reasonable person expects to be a final version."[53] If that sentence stood alone, we would understand the basis for Plaintiffs' concern. But the trial court's next sentence states that, "[r]egardless, this meeting and the events leading up to it do not suggest to me that

---

[49] 287 A.2d 671, 673 (Del. 1972) (citations omitted).

[50] Reply Br. at 49–50.

[51] Supr. Ct. R. 14(b)(vi)(A)(3) ("The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal."). Plaintiffs do argue that the trial court observed that the Contribution Agreement "did not reflect a final Agreement" based upon omissions in the document and the presence of the word "Draft" on the first page supports a finding that Campbell did not intend to be bound when signing it. Opening Br. at 40.

[52] *See, e.g.*, *Remand Opinion,* 2019 WL 4072124, at *18 nn.298, 299; *id.* at *20 nn.331, 333.

[53] *Id.* at *20.

Campbell intended to be bound by the Contribution Agreement."[54] The Remand Opinion also states that, "because the Supreme Court's analysis suggests that both transaction documents address all terms material to the parties, this Court does not examine the materiality of the terms of the agreements, or lack thereof."[55] Thus, we think the fairest reading of the Remand Opinion is that the trial court intended to address, and did address, only the parties' intention to be bound, and that it did not disregard this Court's prior holding.

As to Plaintiffs' contention that the Court of Chancery failed to undertake a separate analysis of the parties' intent to be bound to the LLC Agreement, we find no reversible error. We are satisfied with the trial court's explanation of its holding as to the LLC Agreement where it found that:

> Because the facts surrounding the negotiation and signing of the LLC Agreement are largely identical to those of the Contribution Agreement, the conclusion I draw from Kay and Campbell's negotiations and conduct for the Contribution Agreement applies equally to the LLC Agreement. Nothing about the events leading up to or during the August 28 meeting suggests an intent to be bound by one document and not the other. Therefore, I conclude that Campbell did not intend to be bound by the LLC Agreement.[56]

Finally, we reject Plaintiffs' contention that the Court of Chancery erred in finding that Campbell did not consent to personal jurisdiction based upon Campbell's actual

---

[54] *Id.*

[55] *Id.* at *3; *see also id.* at *13 n.214 ("Although the Supreme Court has tasked me with determining the parties' intent to be bound, the Supreme Court appears to foreclose any analysis of material terms, as I held in my first opinion that there were missing material terms, which the Supreme Court reversed.").

[56] *Id.* at *21.

18

consent contained in the executed LLC Agreement, and in finding that Campbell did not impliedly consent to personal jurisdiction pursuant to 6 *Del. C.* § 18-109(a).

We did not reach this question in our prior Opinion. On remand, the trial court, in addressing the implied consent issue, held as follows:

> Plaintiffs argue post-remand that Campbell became a member and manager of Eagle Force Holdings by executing the April 2014 Letter Agreement and, thus, impliedly consented to personal jurisdiction in Delaware under §18-109(a). The April 2014 Letter Agreement did not inform Campbell that Kay had secretly created a Delaware limited liability company; nor did it mention anywhere the creation of a Delaware limited liability company. To the contrary, it amended the November 2013 Letter Agreement, which mentioned a Virginia limited liability company. When Campbell signed the April 2014 Letter Agreement, he was unaware that Kay had secretly created a Delaware LLC. The April 2014 Letter Agreement, thus, does not serve as implied consent to jurisdiction in Delaware.[57]

The trial court also rejected Plaintiffs' contention that Campbell's failure to object to the provisions in the draft LLC Agreement after he learned of them constituted his implied ratification of them. It held that without an enforceable LLC Agreement, the April 2014 Letter Agreement remained the operative agreement, and that it (for the reasons quoted above) did not reflect Campbell's implied consent to the exercise of personal jurisdiction in Delaware. We find no reversible error in the trial court's conclusions.

*B. The Cross-Appeal*

We now address Campbell's arguments on cross-appeal. Campbell's first argument, that in the absence of personal jurisdiction, he was not subject to contempt citations arising from the status quo order, is largely a rehash of the issue we rejected in

---

[57] *Id.* at *22.

19

the first appeal. We noted that although this Court divided on the issue of jurisdiction in the first appeal, it was unanimous in holding that Campbell was subject to contempt for his violations of the status quo order.

On remand, the Court of Chancery scheduled separate briefing on the merits and on the contempt motions. On September 14, 2018, the Plaintiffs filed a Motion for Contempt Seeking an Order Directing Campbell to Return Funds. This was their fourth contempt motion (the "Fourth Contempt Motion").[58]

On April 23, 2019, the Court of Chancery granted Plaintiffs' Second and Third Contempt Motions, awarded sanctions on the First, Second and Third Contempt Motions, and awarded reasonable attorneys' fees in an amount to be determined later.[59] The court also granted the Fourth Contempt Motion with sanctions to be determined later. On May 17, 2019, the court ordered disgorgement of funds that Campbell had taken, and it awarded attorneys' fees. It also ordered the appointment of a "facilitator" to monitor Campbell's compliance. Then, on September 9, 2019, the court awarded to Plaintiffs attorneys' fees and costs in connection with the contempt motions.

As to the First, Second, and Third Contempt Motions, we reject Campbell's argument that in the absence of personal jurisdiction, he was not subject to the contempt citations arising from the status quo order.[60] In the first appeal, we held unanimously that,

---

[58] *See* App. to Opening Br. at A14.

[59] *Eagle Force Hldgs., LLC v. Campbell*, 2019 WL 1778269 (Del. Ch. Apr. 23, 2019) (Order).

[60] Campbell does not contest any of the Court of Chancery's factual findings relating to his violations of the order.

20

"when a Delaware court issues a status quo order pending its adjudication of questions concerning its own jurisdiction, it may punish violations of those orders with contempt and for sanctions, no matter whether it ultimately finds that it lacked jurisdiction."[61]   We observed that, "the Court of Chancery issued its status quo order while the defendant was *before the court*, as other proceedings were pending."[62]   We observed that some courts have found that, although a party may contest a contempt order for lack of personal jurisdiction, "the party waives that right if it voluntarily decides to contest the *merits* of the claim that it violated a court order, regardless of whether that order was validly issued."[63] We also said that a court must be able to secure compliance with status quo orders or they would be rendered meaningless.  Campbell's present argument, in essence, challenges our prior holding.  He never sought to challenge that ruling on reargument, and we reject his attempt to re-litigate this issue.[64]

As to Campbell's second contention of error on cross-appeal, that the court erred by finding him in contempt without Plaintiffs first submitting a sworn affidavit under Court of Chancery Rule 70(b), we reject that claim as well.  Campbell does not dispute that he received the information that a Rule 70(b) affidavit would contain.  Under Rule 70(b),[65]

---

[61] *Opinion*, 187 A.3d at 1241–42.

[62] *Id.* at 1241(emphasis in original).

[63] *Id.* at 1242 (emphasis in original).

[64] *See Mendez v. State*, 69 A.3d 371, 2013 WL 3270899, at *1 (Del. June 24, 2013) (Table).

[65] Court of Chancery Rule 70(b) states:

> Contempt and other remedies for disobedience of Court order. -- For failure to obey a restraining or injunctive order, or to obey or to perform any order, an attachment may be ordered by the Court upon the filing in the cause of an affidavit showing service on the defendant, or that the defendant has knowledge of the order and

the Court of Chancery may find a party in contempt of court if it fails to obey or to perform an order of which it has knowledge.[66] To be held in contempt, a party must be bound by an order, have notice of it, and nevertheless violate it.[67] In denying Campbell's August 25, 2017 Motion to Dismiss or Reschedule the Contempt Hearing, the Court of Chancery held that, "[t]here is no claim that the defendant or his counsel lacks knowledge or notice of the July 25, 2015 [sic] order sought to be enforced, or the motion to hold defendant in contempt."[68] Also, in granting the Second and Third Contempt Motions and awarding sanctions on the First Motion, the court held that, "Campbell had notice of the Order."[69] In fact, the court noted that Campbell had even submitted a proposed order. He did not challenge the Court of Chancery's findings. Thus, we agree with Plaintiffs that Campbell's argument in this regard is form over substance, and we, accordingly, reject it.

Finally, we address Campbell's third argument on cross-appeal, namely, that the Court of Chancery erred by holding him in contempt for action taken between its initial

---

setting forth the facts constituting the disobedience. At the hearing of the attachment, the examination of the defendant and also of witnesses shall be oral before the Court, unless it be otherwise ordered by the Court.

In other proceedings taken in the name of the State to punish contempt, the attachment may be ordered upon the filing of an affidavit setting forth the facts constituting the contempt and thereupon the proceedings shall be as set forth in the preceding paragraph of this rule.

Ct. Ch. R. 70(b).

[66] *Israel Disc. Bank of N.Y. v. First State Depository Co. LLC*, 2012 WL 1021180, at *2 (Del. Ch. Mar. 19, 2012).

[67] *Id.*

[68] Answering Br. Ex. B (August 30, 2016 Order).

[69] *Eagle Force*, 2019 WL 1778269, at *2.

22

dismissal based upon lack of personal jurisdiction and this Court's reversal, when no stay of proceedings had been obtained under Court of Chancery Rule 62. We agree with Campbell on this issue.

Plaintiffs filed the Fourth Contempt Motion on September 14, 2018, alleging that in the interim period between the Court of Chancery's issuance of the Trial Opinion and this Court's issuance of the Opinion, "Campbell made nine payments from Eagle Force Associates, Inc.'s funds to himself and his wife totaling $1,853,558.47" in violation of Section 3(F) of the July 23, 2015 status quo order (the "2015 Order") issued by the Court of Chancery at the outset of the litigation.[70] As to its duration, the 2015 Order states:

> This Preliminary Injunction shall take effect immediately upon its execution by the Court (the "effective date") and shall remain in effect pending the *conclusion of this action* or further order of this Court.[71]

The parties disputed whether Campbell remained bound by the 2015 Order during the interim appeal period. The Court of Chancery, in an order dated April 23, 2019, held that Campbell did indeed remain bound, holding that:

> The Order bound Campbell during the appeal period because the Delaware Supreme Court's reversal of the Memorandum Opinion nullified the Memorandum Opinion. By making payments to himself and to his wife during the appeal period, Campbell took the risk that the Supreme Court may reverse the Memorandum Opinion, which it ultimately did.[72]

---

[70] Answering Br. Ex. D at ¶ 4 (April 23, 2019 Order Addressing Pls.' Mot. for Contempt) (internal formatting and quotation marks omitted).

[71] *2015 Order*, 2015 WL 4501504, at *3 (emphasis added).

[72] Answering Br. Ex. D at ¶ 6 (April 23, 2019 Order Addressing Pls.' Mot. for Contempt); *see id.* at ¶ 5 ("[T]he effect of a general and unqualified reversal . . . of a judgment, order, or decree is to nullify it completely and to leave the case standing as if such judgment, order, or decree had never been rendered." (quoting 5 C.J.S. *Appeal and Error* § 1126 (updated Mar. 2019)).

Then, in its May 17, 2019 Order Resolving the Fourth Motion for Contempt, the court stated that, "Campbell agrees that he must return $1,097,558.47 to Eagle Force Associates, Inc."[73] Accordingly, the Court of Chancery ordered Campbell to disgorge $1,097,558.47 to Eagle Force Associates.

We disagree with the Court of Chancery that Campbell remained bound by the 2015 Order when he withdrew funds from Eagle Force Associates during the interim appeal period. The Court of Chancery's determination in 2019 that Campbell remained bound conflicts with its own prior ruling, issued in January 2018, which stated unequivocally that the 2015 Order had been dissolved upon issuance of the Trial Opinion. That 2018 ruling was issued in response to Plaintiffs' Motion for Partial Renewal of Preliminary Relief Order Pending Appeal ("Motion for Partial Renewal"), which they filed on December 12, 2017, requesting renewal of the 2015 Order. In that motion, Plaintiffs acknowledged that, "[a]t the time the Court entered its Memorandum Opinion in this case, *the Court dissolved the [2015 Order]* that, *inter alia*, restricted Defendant Stanley Campbell from selling or disposing of equity in [Eagle Force], or certain defined intellectual property . . . ."[74] In its

---

[73] Answering Br. Ex. E at ¶ 5 (May 17, 2019 Order Resolving Pls.' Mot. for Contempt).

[74] Mot. For Partial Renewal of Prelim. Relief Order Pending Appeal at 1, *Eagle Force Hldgs., LLC v. Campbell*, 2018 WL 534465 (Del. Ch. Jan. 24, 2018) (No. 10803-VCF) (emphasis added). Plaintiffs contend that they moved for the partial renewal of the 2015 Order pending appeal because they were concerned with the appeal becoming moot under our holding in *First Allied Conn. Corp. v. Leeds*, 520 A.2d 1044, 1987 WL 36213, at *1 (Del. Jan. 13, 1987) (Table) (dismissing the appeal as moot when appellees, who were not restrained from selling the property at issue to a third party, sold the property to a third party after the trial court's judgment, thereby rendering appellant's claim for specific performance "impossible to accomplish."). Thus, they contend that the requested stay was not a waiver of their argument that the 2015 Order remained in effect.

January 24, 2018 order denying that motion (the "January 2018 Order"), the court stated that "on September 1, 2017, the Court issued a Memorandum Opinion dismissing Plaintiffs' complaint for lack of personal jurisdiction and *dissolved the [2015] Order prohibiting Defendant from selling or transferring equity in Eagle Force Associates, Inc., equity in Eagle Force Health, LLC, or specified intellectual property assets*."[75] The court stated further that, "Plaintiffs seem to be asking for a *per se* rule that the Court issue an injunction in all cases where a finding regarding the ownership of equity has been appealed, but I am aware of no such rule."[76] Having failed in the Court of Chancery to obtain a renewal of the 2015 Order, Plaintiffs then filed a motion in this Court for partial renewal of the 2015 Order, again acknowledging that, "[w]hen Chancery Court entered its Memorandum Opinion deciding this case (the subject of the pending appeal), *it dissolved the [2015 Order]*."[77] Without commenting on whether the 2015 Order had dissolved, we denied the motion on January 31, 2018.[78]

Nearly a year later, during the December 13, 2018 oral argument on Plaintiffs' Fourth Contempt Motion, the Court of Chancery pointed out that Plaintiffs' Motion for Partial Renewal had stated that "the Court dissolved the [2015] Order" when the court

---

[75] *Eagle Force Hldgs., LLC v. Campbell*, 2018 WL 534465, at *1 (emphasis added).

[76] *Id.*

[77] Pls.' Mot. For Partial Renewal of Prelim. Relief Pending Appeal at 2, *Eagle Force Hldgs., LLC v. Campbell*, No. 399, 2017 (Del. Jan. 31, 2018) (emphasis added).

[78] *Eagle Force Hldgs., LLC v. Campbell*, No. 399, 2017 (Del. Jan. 31, 2018).

entered the Trial Opinion. The court specifically asked counsel to address that language.[79] In fact, it asked Plaintiffs' counsel: "what I'm struggling with is if the [2015 Order] wasn't dissolved, why did you need [the partial renewal] at all?"[80] Plaintiffs explained that their use of the word "dissolved" was "unfortunate," and was an attempt to emphasize the risk of their appeal becoming moot under *Leeds*.[81] Later, in its April 23, 2019 Order Addressing Plaintiffs' Motion for Contempt, the court, without mentioning its prior January 2018 Order, held that Campbell remained bound by the 2015 Order in the interim appeals period.

Under these circumstances, we hold that it would be unfair and inequitable to hold that Campbell remained bound by the 2015 Order when the Plaintiffs contended, and the Court of Chancery itself stated in its January 2018 Order, that the 2015 Order had dissolved upon issuance of the Trial Opinion.[82] But even apart from the court's prior ruling, with no stay order in place during that interim period, Campbell cannot be held in contempt for a violation of it.[83]

---

[79] Oral Argument Tr. at 93, *Eagle Force Hldgs., LLC v. Campbell*, 1083-VCF (Del. Ch. May 17, 2019) (Order).

[80] *Id.* at 95.

[81] *Id.* at 96; *see Leeds*, 520 A.2d 1044, 1987 WL 36213.

[82] We are aware that in the May 17, 2019 Order Resolving Plaintiffs' Motion for Contempt, the Court of Chancery stated that "[i]n the Stipulated Order, Campbell waives his due process right to an evidentiary hearing to contest whether Campbell had notice of the [2015] Order and whether he violated the [2015] Order." But in the referenced May 10, 2019 stipulated order, Campbell stated that, "[n]othing in this stipulation shall be deemed to be a waiver of Campbell's right to seek an appeal to the Delaware Supreme Court from this Court's Order [Directing Campbell to Return Funds Taken from Eagle Force Associates, Inc. during Appeal Period], except as to the amount of funds taken, or to seek a stay of the Order pending appeal."

[83] *See* Del. Const. Art. IV, § 24; *see also* Randy J. Holland, *The Delaware State Constitution* at 193 (2d ed. 2017) ("Under [Article IV, section 24], appellate proceedings do not operate as a stay on the execution of the judgment, unless sufficient security is given . . . . The Supreme Court has

On appeal, Plaintiffs direct our attention to the text of the 2015 Order, arguing that, by its terms, the 2015 Order remained "in effect pending the conclusion of this action or further order of this Court," and the action had not concluded because there was an appeal pending. But based upon the parties' own pleadings and the court's January 2018 Order, "conclusion of this action" was likely intended to mean the trial court's post-trial final judgment issued on September 1, 2017.[84] This reading is also more consistent with the commonly understood duration of a preliminary injunction.[85] Thus, even aside from the

---

explained that the supersedeas bond serves 'to protect the appellee from losing the benefit of the judgment through the delay or ultimate non-performance by the appellant.'") (citing *DiSabatino v. Salicete*, 681 A.2d 1062, 1066 (Del. 1996)).

[84] Looking to *Blacks' Law Dictionary*, we note that "action" is defined as a "civil or criminal judicial proceeding." *Action*, *Blacks' Law Dictionary* (11th ed. 2019). The definition then quotes *Estee's Pleadings Practice, and Forms*, stating that, "[m]ore accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree. *The action is said to terminate at judgment*." *Id.* (quoting 1 Morris M. Estee, *Estee's Pleadings, Practice, and Forms* § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885)) (internal quotation marks omitted) (emphasis added). "Final judgment" is defined as "[a] court's last action that settles the right of the parties and disposes of all issues in controversy . . . Also termed *final appealable judgment*. *Final judgment*, *Blacks' Law Dictionary* (11th ed. 2019). The parties also later stipulated to an order for preliminary interim relief after our reversal Opinion, which the Court of Chancery granted on June 18, 2018. *Eagle Force Hldgs., LLC v. Campbell*, C.A. No. 10803-VCF, at *9 (Del. Ch. June 18, 2018). This stipulated order was substantially similar to the 2015 Order.

[85] *See Gimbel v. Signal Cos.*, 316 A.2d 599, 602 (Del. Ch. 1974) *aff'd*, 316 A.2d 619 (Del. 1974) ("[T]he preliminary injunction constitutes extraordinary relief generally employed 'to do no more than preserve the status quo pending the decision of the cause at the final hearing on proofs taken.'") (quoting *Williamson v. McMonagle*, 83 A. 139, 140 (Del. Ch. 1912)); *Powers v. Fidelity & Deposit Co. of Md.*, 41 A.2d 830, 853 (Del. Super. 1945) ("It is clearly and concededly the law of Delaware that an appeal from a decree dissolving an injunction does not operate to reinstate or continue the injunction unless a special order to that effect is made by the Chancellor or by the Supreme Court.") (citing *Cutrona v. City of Wilmington*, 125 A. 417 (Del. Ch. 1924)). Further, federal courts have held that, "[a] preliminary injunction imposed according to the procedures outlined in Federal Rule of Civil Procedure 65 dissolves *ipso facto* when a final judgment is entered in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093 (9th Cir. 2010); *see also U.S. ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1512 (10th Cir. 1988) ("With the entry of the final judgment, the life of the preliminary injunction came to an end, and it no longer had a binding effect on any one. The preliminary injunction was by its very nature interlocutory, tentative and

prior pleadings and ruling, we reject the Plaintiffs' contentions that the 2015 Order remained in effect following the Trial Opinion. Accordingly, we hold that Campbell was not bound by the 2015 Order following the issuance of the Trial Opinion, and thus cannot be held in contempt for violating its terms during the interim appeal period.

### III.    Conclusion

Accordingly, for the foregoing reasons, we AFFIRM the decision of the Court of Chancery in part, and REVERSE in part.

---

impermanent." (quoting *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 144 (2d Cir. 1977))); *Fundicao Tupy S.A. v. U.S.*, 841 F.2d 1101, 1103 (Fed. Cir. 1988); *Cypress Barn, Inc. v. W. Elec. Co.*, 812 F.2d 1363, 1364 (11th Cir. 1987); Charles Alan Wright, Arthur R. Miller & Mary K. Kane, 11A *Federal Practice and Procedure* § 2947 (3d ed.) ("A preliminary injunction remains in effect until a final judgment is rendered or the complaint is dismissed, unless it expires earlier by its own terms, or is modified, stayed, or reversed."); Joseph T. McLaughlin with updates by Anthony J. Scirica, 13 *Moore's Federal Practice - Civil* § 65.20 (2020 ed.) ("The order granting a preliminary injunction remains effective until final adjudication. For example, following a grant of a preliminary injunction, if a plaintiff withdraws the complaint or the action is dismissed for any reason, the preliminary injunction becomes ineffective."); George C. Pratt, 20 *Moore's Federal Practice - Civil* § 308.21 (2020 ed.) (stating that a final judgment in an action for an injunction "will not be stayed, even if an appeal is taken, unless the court orders otherwise").

## Exhibit A

### Signatures to the Amended and Restated Limited Liability Company Agreement of Eagle Force Holdings, LLC[86]

MEMBERS:

STANLEY V. CAMPBELL

By: _____
Name: _____
Title: _____

Address 2250 Corporate Park Drive
Suite 205
Herndon, Virginia 20171

MEMBERS:

EF INVESTMENTS, LLC
By: _____
Name: _____
Title: _____

Address 11300 Rockville Pike
Suite 715
Rockville, MD 20852

Solely for purposes of Section 3.11.10:

Richard A. Kay

IN WITNESS WHEREOF, the parties have executed this Amended and Restated Limited Liability Company Agreement as of the day and year first set forth above.

COMPANY:

EAGLE FORCE HOLDINGS, LLC,
a Delaware limited liability company

By: _____
Name: _____
Title: _____

---

[86] App. to Opening Br. at A796–A798.

29

## Exhibit B

## Signatures to the Contribution and Assignment Agreement[87]


IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be duly executed on its behalf, by its officer(s) thereunto duly authorized or for himself, as of the day and year first set forth above.

EAGLE FORCE HOLDINGS, LLC

By: _____
Name:
Title:


STANLEY V. CAMPBELL

_____

---

[87] App. to Opening Br. at A735.

**VAUGHN**, Justice, concurring:

I continue to believe that the Court of Chancery's finding in its Trial Opinion that Kay and Campbell did not form a contract should have been affirmed for the reasons Chief Justice Strine and I gave in our opinions concurring in part and dissenting in part when this Court's May 24, 2018 Opinion was issued. I agree with the rulings the Court makes today on the contempt issues.